THE HACKENSACK WATER COMPANY, RE-ORGANIZED, v. THE MAYOR AND COUNCIL OF THE CITY OF HOBOKEN.

1. The act of March 20th, 1857 (*Pamph. L., p.* 500), providing water commissioners for the city of Hoboken, construed.

2. Under an act entitled "An act to enable cities to supply the inhabitants thereof with pure and wholesome water" (*Pamph. L.* 1876, *p.* 366), the city of Hoboken is authorized to contract for a supply of water for public and private use.

Motion for judgment on *postea.*

This is an action brought by the plaintiff to recover for water delivered by it into the main pipe of defendant's water system, under a written contract between the parties to the suit. The cause was tried before the court below without a jury, and the transcript is returned to this court with the following "findings":

*First.* That the writing of November 15th, 1881, purporting to be a contract between the plaintiff and the defendant, a copy of which is annexed to the declaration, was duly executed as it purports to be executed.

*Second.* That for the purpose of furnishing and supplying to the defendant a good and sufficient supply of pure and wholesome water for all purposes in the city of Hoboken, pursuant to the first clause of said writing, the plaintiff expended upwards of $1,000,000, and made a sixteen inch and one twelve inch connection from their reservoir, each to be joined to the main pipe of the city of Hoboken at the northerly line of said city, at which place the said supply was to be furnished.

*Third.* That the plaintiff furnished and supplied, according to the terms of said writing, a good and sufficient supply of pure and wholesome water from its said connections into the main pipe of the city of Hoboken and to the city of Hoboken, commencing November 1st, 1882, and are supplying water according to the terms of said writing.

*Fourth.* That the amount of water so furnished from November 15th, 1882, to February 1st, 1887, was six hundred and forty million six hundred and sixty-seven thousand cubic feet, which, at the prices specified in said writing of November 15th, 1881, was for $350,828.99, of which there was paid to plaintiff from time to time $322,713.48, leaving, on February 15th, 1887, $28,115.51, which amount has not been paid.

*Fifth.* That the value of the water so furnished to Hoboken, irrespective of the price fixed by the writing, was more than the above named amount.

*Sixth.* That the statement of water rates due according to the terms of said writing, from November 1st, 1882, to March

15th, 1887, a copy of which is annexed to the declaration, was made up at the time of its date by Michael Murphy, water registrar of the city of Hoboken, and Charles B. Brush, chief engineer of the water company, agreed to between said Murphy and Brush and signed by each.

*Seventh.* That previous to November 15th, 1881, and on September 2d, 1881, a writing somewhat similar in its terms was duly executed, purporting to be a contract between the plaintiff and the water commissioners of the city of Hoboken.

*Eighth.* That subsequent to the execution of said writing of September 2d, 1881, between the plaintiff and the water commissioners of the city of Hoboken, the plaintiff sent to the defendant a letter, stating, among other things, that since the making of the contract of September 2d, the water company had been advised by eminent counsel, that a contract for the purpose of supplying pure and wholesome water to the city of Hoboken should be entered into by the corporate authorities of the city, and to that end that the city should first accept the provisions of the act entitled "An act to enable cities to supply the inhabitants thereof with pure and wholesome water," approved April 21st, 1876, by obtaining the assent of the legal electors of said city to the acceptance of said act. Pursuant to which request a special election was held in the city of Hoboken, on the 8th day of November, 1881, for the purpose of obtaining such assent, and the said act was duly adopted.·

Argued at February Term, 1888, before BEASLEY, CHIEF JUSTICE, and Justices MAGIE and GARRISON.

For the plaintiff, *B. Williamson.*

For the defendant, *J. F. Minturn.*

The opinion of the court was delivered by

GARRISON, J. The circuit record and *postea* in this cause bring up certain "findings" of fact, upon which the plaintiff now moves this court for leave to enter judgment.

The plaintiff's action is for water furnished to " The Mayor and Council of the City of Hoboken," the defendant, and the contested point is, whether the municipal corporation had the requisite power to contract with the plaintiff in the premises.

The contract, which is in writing, bears date November 15th, 1881, and is duly executed by the parties. From November 15th, 1882, the plaintiff has performed, in a satisfactory manner, all the parts of the said agreement to be by it performed, earning under its supposed contract $350,828.97, of which sum it has already been paid $322,713.48, leaving due a balance on February 15th, 1887, of $28,115.51.

Upon the argument the chief reliance on the part of the defendant was placed upon an act of the legislature of this state approved March 20th, 1857, entitled "An act to authorize the water commissioners of Hoboken to contract for and introduce water into said city, and to provide for the payment thereof." *Pamph. L.* 1857, *p.* 500.

· This act, whose title very imperfectly indicates the limited extent of its grant of power, concludes with a repealer of so much of the defendant's charter as is inconsistent with the provisions thereof. The contention of the defendant is, that thereby not only is the clause of its said charter repealed which authorized city council to make all necessary arrangements for a full supply of water, but that the board of commissioners thereby created is now, and since the passage of said act has been, the only medium by which the city could contract for its water supply.

In order that such a. result should follow, it is necessary that the act in question should contain a grant of power at least co-extensive with that which it claims to supersede, and that the authority by it conferred be inconsistent with the exercise by the city of any other similar power by it possessed.

This act of 1857 is of very limited scope. Its preamble recites that under a previous act of the legislature the inhabitants of Jersey City are supplied with water ; that it has been represented to the legislature that the inhabitants of Hoboken are desirous of using the same, and to that end ask for power

to make contracts with the Jersey City water commissioners, looking toward a supply of water for Hoboken from that source, viz., the water controlled by the Jersey City commission. The act then names six persons as the board of water commissioners of the city of Hoboken, and authorizes and empowers them " to make and enter into such contracts, arrangements and agreements as in their discretion may be deemed advisable, and as may be agreed upon with the water commissioners, for the time being, of Jersey City, to enable said commission (*i. e.* of Hoboken) to introduce water into the city of Hoboken for the use of the inhabitants thereof."

The remainder of the act occupies itself with provisions as to ways and means for raising the moneys that may be needed to carry out such contracts, should any be made, and in other unimportant details as to the election, terms and compensation of said commissioners. The repealer is in the following language :

"*Be it enacted*, That all such parts of the act entitled 'An act to incorporate the city of Hoboken,' approved March twentieth, eighteen hundred and fifty-five, as are inconsistent with the provisions of this act, are hereby repealed."

The act incorporating the city of Hoboken thus referred to, conferred upon its city council power "to make all necessary arrangements for a full and copious supply of good and wholesome water for public and private use."

The question now presented is, whether the general power to supply the city of Hoboken with water is so inconsistent with the legislative permission for the board of water commissioners to make contracts with a like board of commissioners of Jersey City, that the passage of the later act will, *ipso facto*, eliminate from the charter of the city of Hoboken all of the previous grant of power in this respect; or, to put the matter in the broader aspect required by this case, is the latter statute clearly intended to prescribe the only method by which, under any and all circumstances, the city of Hoboken can obtain for its inhabitants a supply of water ? To maintain the affirmative of either proposition is to insist that the legis-

lature intended that the city of Hoboken should be wholly without water in any (*inter alia*) of the following contingencies, viz.: If the commission, in the exercise of its discretion, did not contract with Jersey City; if the Jersey City commission refused to supply Hoboken; if the parties were unable to agree upon terms; if water having been introduced it was found impure, or unfit for use, or became so; or, if with the growth of Jersey City it found itself unable or unwilling longer to spare an increasing supply for the city of Hoboken, likewise growing in its requirements.

The mere statement of these contingencies, none of which are far-fetched or improbable, negatives the notion that the legislature, in erecting this commission and vesting it with power to execute a particular contract, not certain ever to be made, intended to strip the municipality of one of its most important and necessary functions.

It should further be borne in mind that there is no suggestion from any source of any conflict of authority arising out of any interference with the commissioners seeking to contract or to perpetuate a contract with Jersey City. On the contrary, the commission itself, so the "findings" state, executed with this plaintiff, upon this same subject, a contract somewhat similar to the one in suit, clearly showing an abandonment by the water commission of all contractual relations with the Jersey City board, if, in fact, any ever at any time existed.

On the whole we must conclude, that the act of 1857 was merely an enabling act; that it did not make a new body politic, with independent powers inconsistent with those already enjoyed by the municipality of Hoboken, but that it only provided for the municipality a special agency by which it should act in seeking to contract with another *quasi*-corporation of doubtful powers, and that the repealer, in effect, meant that nothing in the charter of the city should be deemed to authorize any interference with this special agency while operating or seeking to act within the lines thus indicated for it by the legislature.

As no such interference is pretended, the city of Hoboken may be considered as possessing all the powers and duties, in respect to providing its inhabitants with a water supply, that it had prior to the Water Commission act of 1857, or which it has since acquired by applicable legislation. Our attention is therefore directed to the consideration of the powers possessed by the city of Hoboken in this respect from sources other than the said act of 1857.

The grant of power contained in the city charter, while conferring on city council general authority to make all necessary arrangements for providing for the city a full water supply, hedges it about by several express provisos, one of which is, that no arrangement shall be made which will require the payment by the city of more than $20,000 a year. Inasmuch as the annual payments called for by the contract now sought to be enforced are not less than three times that sum, it is evident that if the city is attempting to act under the power contained in its charter, it has grossly exceeded its authority. Nor is this state of affairs ameliorated by the supplement to said charter approved March 14th, 1856. *Pamph. L., p.* 285. For while that act has express reference to the question of providing a water supply for said city, it contains a proviso requiring the submission of the proposed contract to popular vote, so that if we hold that the general repealer which it contains wipes out the provisos of the charter, the only effect will be to substitute for them one equally fatal to the validity of the present contract.

But the contention of the plaintiff is, that authority to make the contract now under consideration was conferred upon the defendant by an act of the legislature, entitled "An act to enable cities to supply the inhabitants thereof with pure and wholesome water," approved April 21st, 1876. *Pamph. L., p.* 366.

This is the enactment referred to in the "eighth finding" as having been adopted by a vote of the electors of the city of Hoboken, on the 8th day of November, 1881.

Such an adoption being the only condition by which the

universal application of the act to cities is limited, the statute in question will, if it authorizes the making of contracts similar to the one in suit, supply to the defendant the authority to enter into the agreement set forth in the plaintiff's pleadings.

In construing this act in reference to the defendant corporation, we must premise what indeed is evident from the contract itself, viz.: that the city of Hoboken is in possession of its own water plant for the distribution of water throughout the city, and that its needs in this respect are for a supply of water only, and not for authority to build, buy or acquire works or franchises for their construction.

The act in question is, therefore, very much broader than the plaintiff's case requires.

Section first of this act, in the most general terms, authorizes any city within the state to take and convey from such source or sources as may be practicable, such quantity of pure and wholesome water as may be required for domestic and other purposes by its inhabitants. To this end such city is empowered to acquire by purchase of any water company within said city, not only all its real and personal property, but to assume all its franchises and privileges, so that they may vest in the city in as full and ample a manner as they were held by the water company. The privileges thus referred to as something distinct from the plant and essential to its enjoyment, can be none other than the right to get and take water by such arrangements with those owning or controlling it as the water company had been able to make.

The title of the act, the general grant of power above referred to, and the necessarily incidental power to assume and continue the water rights enjoyed by the water company, all show that the legislature, in conferring the greater power, viz., to purchase water works with their privileges, intended to confer the lesser power of so acting in the premises that those privileges, which were essential to the attainment of the objects which the act had in view, should be acquired by, vested in and kept alive by the city as part of its means of obtaining and continuing its supply of water.

That such was the legislative intent is clear from section second of the act, which provides that the city, after acquiring the plant, may condemn water rights required by it for the purpose of operating its works, whenever there has arisen a disagreement between the city and the water company or owner of such rights as to the amount of compensation to be paid therefor. The rights thus referred to are, in the act, distinguished from land, and hence must mean any right to draw of or take from any source water for use by the city in connection with its water works. The provision that condemnatory proceedings should be had only in case of a disagreement between the city and the owner in respect to the terms upon which said rights might be acquired by the city, indicates that one of the powers conferred by the act was that of arriving at such an agreement as should render proceedings in condemnation unnecessary. No other construction will give any rational meaning to this and other provisions of the act.

All doubts in regard to the application of the provisions of this act to a city situated as the defendant is in respect to its water supply, are set at rest by a supplement to said act approved March 9th, 1877 (*Pamph. L., p.* 119), by which it was enacted, "That any city in this state owning or controlling water works, under and by virtue of any act heretofore passed, may enjoy and exercise all the powers, rights and privileges conferred by this act, so far as the same may be applicable, and with no other limitations or restrictions than are herein contained and specified."

The ownership and control of the defendant over its water works must, in the absence of any suggestion to the contrary, be presumed to be lawful, hence within the purview of this act, whether acquired by virtue of the act to which this is supplemental or of one previous thereto.

The legislative intent herein expressed to separate from the authority to acquire the works the other powers, rights and privileges conferred by the act, shows not only that these powers are such as we have indicated, but also that they were of such a nature that a city possessing everything but the

water itself, could, by means of the authority thus conferred, acquire the right of taking it by agreement with the owner or person controlling the same, or failing in making such agreement, then by condemnation either of the land itself or of the right to take the water therefrom.

Such an agreement is presented in the case now before us.

We are of opinion that the power to enter into such an agreement is amply conferred by this act of 1876 and the supplements thereto.

The justice who tried the cause at circuit has found, as a fact, that the adoption of the provisions of this act was had in the manner provided by the act itself.

The right of the plaintiff to maintain an action on this contract is therefore sustained.

The court below having found the amount of the unpaid balance earned under this contract to be $28,115.51, there should be a judgment entered for the plaintiff as of the first day of the term of this court succeeding the circuit trial term for said amount, with interest thereon from the 15th day of February, 1887, up to the said term of this court.