THE STATE, EX REL. HOBOKEN MANUFACTURERS RAILROAD COMPANY, RELATOR, v. THE MAYOR AND COUNCIL OF THE CITY OF HOBOKEN ET AL.

Argued November 11, 1907—Decided February 24, 1908.

1. The doctrine of *res judicata* applies alike to the decrees of courts exercising equity jurisdiction and to the judgments of courts of law, and a final determination in either court may be invoked as a bar or estoppel in the other.
2. Under a statute which makes the lien for water depend upon its use, an attempt to impose a water lien upon property where no water has been contracted for or furnished to or used upon or for the benefit of that property is without warrant and illegal.

3. *Mandamus* is the proper remedy to enforce the performance by a public board of a plain duty to cancel an illegal water lien against property.

On application for *mandamus*.

Before Justices SWAYZE and TRENCHARD.

For the relator, *Lindabury, Depue & Faulks.*

For the defendants, *John J. Fallon.*

The opinion of the court was delivered by

TRENCHARD, J.   This is an application for a writ of *mandamus* to compel the city of Hoboken and the board of street and water commissioners of that city to accept $200.81 in full satisfaction and discharge of a charge of $2,115.07 now appearing of record in the office of the board as a lien upon certain property of the relator in the city of Hoboken, and upon the receipt of such payment to cancel the charge or lien of record.

The following facts are established by the depositions:

The property, which is subject to the charge or lien, was conveyed to the relator by the Hoboken Land and Improvement Company in June, 1906.   It consists of a tract of land situate at the northwest corner of Eighth and Grand streets, having a frontage of two hundred and seventy-five feet on the westerly line of Grand street, and of one hundred feet on the northerly line of Eighth street.   It is divided on the city map into eleven contiguous lots fronting on Grand street, each of which has a frontage of twenty-five feet.   In 1894 the then owner of the two hundred and twenty-five feet of the property nearest the corner of Grand and Eighth streets executed to the Hudson Trust and Savings Institution a mortgage upon it for $15,000.   The owner at that time of the two hundred and twenty-five feet was not then, or ever, the owner of the remaining fifty feet of the property, and it was not covered by the mortgage.   In May, 1895, the owner

conveyed the two hundred and twenty-five feet of the property to the Franklin Paper Mills, and the receivers of that company, in March of 1897, sold it to two persons of the names of Curran and Bruning, who immediately conveyed it to the Carr-Curran Paper Mill, a corporation which was the owner thereof until the termination of the foreclosure proceedings shortly to be described. During some or all of the period from February 1st, 1896, to May 1st, 1898, the Franklin Paper Mills and the Carr-Curran Paper Mills maintained and operated a paper mill on the two hundred and twenty-five feet of the property for the operation of which mill considerable quantities of water were furnished by the city. This water was metered and charges to the amount of $7,292.37 were made during that period by the city against the Franklin Paper Mills for furnishing it. In the year 1898, and after these charges had been incurred, the Hudson Trust and Savings Institution filed a bill of complaint in the Court of Chancery to foreclose the mortgage. In the bill it was alleged that the city of Hoboken claimed to have a lien upon the mortgaged premises to the amount of $7,292.37 for the water charges, plus a penalty of five per cent. for their nonpayment, but it was averred that the charges did not constitute a lien on such premises because the water had been furnished by meter and could not be lawfully assessed against them. The bill described in detail charges for the water furnished, and they are the same as those which the relator now seeks to have canceled without payment. The city filed an answer to the bill in which it claimed that the water charge was a prior lien on the mortgaged premises and should be first paid out of the proceeds of the foreclosure sale. The suit was duly referred to Vice Chancellor Pitney, and a hearing had before him, in which the city was represented by its attorney. After taking proofs and hearing argument the Vice Chancellor filed an opinion holding that the water charge was "simply a debt of the paper company, without any of the characteristics of an assessment levied upon the land;" that it did not constitute such a lien as could reach beyond the estate of the person who contracted the debt, and that it was

subject to the lien of the complainant's mortgage. *Hudson Sav. Inst.* v. *Carr-Curran Paper Mills Co.,* 13 *Dick. Ch. Rep.* 59. Upon it a final decree was entered on May 23d, 1899, which decree foreclosed the rights of all of the parties in the mortgaged premises, and directed that the same should be sold free and clear from their liens, and that the mortgage of the complainant should be first paid out of the proceeds of the sale. An appeal was taken from this decree by the city, but was dismissed for want of prosecution. The property covered by the mortgage was sold under the decree to Michael F. Foley, and was subsequently purchased by the Hoboken Land and Improvement Company, which, as already stated, conveyed it to the relator in June, 1906.

During the time that the water was furnished to the paper mill the remaining fifty feet of the property, being the portion thereof furthest from the corner of Grand and Eighth streets, was neither owned nor leased by any of the owners of the paper mill property. The ownership of the two portions of the property was, in fact, entirely separate and distinct until a considerable time after the termination of the foreclosure suit. No portion of the paper mill was on the fifty feet of the property. No water was ever used upon or furnished to or on any part of it, either from the mains in the street or from the property on which the paper mill was situated, or from any other source. Some years after the termination of the foreclosure suit the Hoboken Land and Improvement Company acquired title to this fifty feet of the property, and also, as stated, to the other two hundred and twenty-five feet, and in June, 1906, conveyed the entire property to the relator.

Subsequent to the foreclosure sale arrangements were made between the city of Hoboken, acting through its board of water commissioners, and the Hackensack Water Company, which has for many years furnished to Hoboken all of the water used there, by which the charge of $7,292.35 for the water so furnished to the paper mill was reduced to $1,823.10, which last-mentioned charge, with the penalty of five per cent., or $91.15, imposed thereon for its non-payment (aggre-

gating $1,914.25), is the portion of the water charge or lien now appearing of record against the relator's property, which it asserts is illegal and should be canceled without payment.

Subsequent to the foreclosure suit, and in the year 1900, additional water was furnished to the paper mill, and a charge of $191.25 made therefor, on which a penalty of five per cent., or $9.56, has been imposed for its non-payment, the total charge for water furnished since the foreclosure suit being therefore $200.81. No reduction has been made in this charge, and none is sought by the relator. Its position is that the defendants should be compelled to accept that sum of $200.81 in full satisfaction of the charge or lien appearing against the property.

The board of water commissioners constitutes the department of the government of the city of Hoboken having charge of the furnishing of water to its inhabitants, of the making of the charges therefor, and of their collection, and all charges not paid are entered upon the records in its office.

An inspection of the records of such office shows a lien on the property of relator of $2,014.35 for water so furnished, plus a penalty of five per cent. for the non-payment thereof, or $2,115.07 in all (which lien constitutes a cloud upon the title), and that $1,914.26 of this lien was for water furnished prior to the decree in the foreclosure suit, and $200.81 of it was for water subsequently furnished. The relator has made a legal tender to the person in charge of the office of the sum of $200.81, being $191.25 for the water furnished to the premises subsequent to the termination of the foreclosure suit and $9.56 for the five per cent. penalty thereon, and requested that the entire water lien appearing of record against the relator's property should be canceled. This tender and request was refused.

Upon these established facts we think that the relator is entitled to the writ which it seeks.

The disputed charge of $1,914.25 is no longer a lien upon the two hundred and twenty-five feet of the property formerly occupied by the paper mill.

It was this same charge that Vice Chancellor Pitney ex-

pressly held to be only a debt and not a lien as against the mortgage placed upon the property before it was incurred. The decision established that the statute under which the water was furnished fell short "of giving such a lien as will reach beyond the estate of the person who contracts the debt." When the interest of the owner of the equity of redemption in the property was sold under the foreclosure decree, any lien that the city may have had on the mortgaged premises for the water so furnished to it therefore ceased to exist. That this decree is binding upon the defendants in this proceeding cannot be questioned.

The doctrine of *res judicata* applies alike to the decrees of the courts exercising equity jurisdiction and the judgments of courts of law, and a final determination in either court may be invoked as a bar or estoppel in the other. See 24 *Am. & Eng. Encycl. L.* (*2d ed.*) 721, and cases there collected.

As no pretence is made that any water has been furnished to the property since the decree in the foreclosure suit was entered, except that for which is made the charge of $200.81, the defendants should be compelled to accept the last-mentioned sum and upon its payment to cancel the charge appearing of record against the two hundred and twenty-five feet of the property.

The disputed charge of $1,914.25 is not a lien upon the fifty feet of the property which was not occupied by the paper mill, because no water has ever been contracted for or furnished to or used upon or for the benefit of that property.

In the year 1880 the city formally adopted the provisions of the General Water act of 1876 (*Pamph. L., p.* 366), and has ever since proceeded under it, as appears by the case of *Hackensack Water Co.* v. *Hoboken,* 22 *Vroom* 220.

By the provisions of that act the charge or lien for water is made to depend upon its use. Under these circumstances the attempt to impose a water lien upon the fifty feet of the property is clearly without warrant and illegal.

That *mandamus* is the proper remedy to compel the performance of such a duty is well established. See *High Extr. Rem.,* §§ 140, 145; 2 *Cooley Tax.* (*3d ed.*) 1356, 1359; *Peo-*

*ple* v. *O'Keefe, Registrar, &c.*, 90 N. Y. 419; *Clementi* v. *Jackson, Registrar, &c.*, 92 *Id.* 591.

Since there has been a full hearing on the rule to show cause, a peremptory writ of *mandamus* should issue forthwith commanding the defendants to accept from the relator $200.81, and upon the receipt thereof to cancel the water charge against the property, with costs.