PASSAIC COUNTY CIRCUIT COURT.

GERALD F. JACOBSON AND ADRIENNE O. JACOBSON, PLAINTIFFS, v. FIRST NATIONAL BANK OF BLOOMINGDALE, A BANKING CORPORATION, DEFENDANT.

Decided April 19, 1943.

For the plaintiffs, *Francis D. Plumb*.

For the defendant, *J. Chester Massinger*.

LEYDEN, C. C. J.   The defendant moves for judgment on the pleadings, asserting that the issues sought to be raised in the present action are *res judicata* by virtue of a final decree of the Court of Chancery and its satisfaction, in a proceeding between the same parties involving the same subject-matter. A resume of the controversy is necessary to an understanding of the problem.

In June, 1939, the plaintiffs were the owners of a plot of land in Oradell, New Jersey, on which they decided to erect a dwelling.   To that end, through an intermediary, Mortgage Service Bureau, the plaintiffs and the defendant bank entered into a contract wherein the defendant agreed to lend and the plaintiffs to borrow $5,800 as an installment construction loan to be secured by a Federal Housing Administration mortgage. By the terms of the agreement 20% or $1,160 of the loan was to be paid when the roof was on the dwelling, 30% or $1,740 when it was brown plastered, and the balance of $2,900 upon completion.   The first installment was advanced by the bank on July 24th, 1939.   The second installment of $1,740 became payable on August 24th, 1939, and under the terms of the agreement the plaintiffs gave promissory notes to the

defendant in the amount of each installment and a demand mortgage for $2,900, it being the intention of the parties to cancel the mortgage upon the completion of the building and the execution of a mortgage for $5,800. Through the machinations of the intermediary the plaintiffs did not receive the second installment. The bank refused to make further payment and thereupon the Chancery suit was instituted by the plaintiffs, alleging that they were without adequate remedy at law and praying that the bank:

(1) be enjoined from any action at law or in equity upon the demand notes and the mortgage of $2,900 then of record;

(2) that the mortgage be decreed to be canceled and no longer a lien upon the premises of the plaintiffs;

(3) that the bank be enjoined from assigning the notes and mortgage of $2,900;

(4) that it be decreed that the plaintiffs have received the sum of $900 in pursuance of the mortgage;

(5) that the agreement to lend the $5,800 be specifically performed; and

(6) for such other and further relief as may by the Chancellor be deemed equitable and just.

After hearing on bill, answer and proofs the Court of Chancery on the 26th day of May, 1941, ordered specific performance of the agreement to lend the $5,800, decreeing the immediate payment by the defendant of the second installment of $1,740 and retaining the cause with leave to the plaintiffs to apply for further relief to compel the defendant to pay the balance of the $5,800, upon proof that the conditions of the agreement regarding the final payment had been complied with. *Jacobson* v. *First National Bank of Bloomingdale,* 129 *N. J. Eq.* 440; 20 *Atl. Rep.* (*2d*) 19; affirmed on January 9th, 1942, 130 *N. J. Eq.* 604; 23 *Atl. Rep.* (*2d*) 409. The bank completed its part of the transaction and the decree of the Court of Chancery was satisfied on March 16th, 1942.

On September 21st, 1942, the present action was commenced alleging substantially the terms of the agreement for the $5,800 installment construction loan; the commencement of the erection of the dwelling within the contemplation of

the parties; the performance by the plaintiffs of all conditions precedent, and the breach of the agreement by the defendant by its refusal to make the second installment payment when due. The damages resulting from the breach, within the contemplation of the parties, are alleged to be the value of the use and occupation of the dwelling from October 1st, 1939, the anticipated completion date, to October 1st, 1941, the actual completion date, and for the monetary loss sustained arising out of lien claims filed against the land and uncompleted building by creditors of the plaintiffs. The answer, while admitting the agreement, its terms, the commencement of the construction of the dwelling and the due date of the second payment, denies any breach of the agreement and resultant damage.

Six separate defenses set up in various ways that the final decree of the Court of Chancery is *res judicata* of the issues sought to be litigated in the present action and a bar to its prosecution by the plaintiffs.

The doctrine of *res judicata* has two phases; (1) where the second cause of action between the same parties or their privies is founded on the same claim or demand as the first; (2) where the second cause of action is founded on a different claim or demand. In the first, the prior judgment is conclusive not only as to all matters which were actually litigated and decided but as to all which might or should have been. In the second, the prior judgment is conclusive only as to such matters as were actually litigated and determined. *City of Paterson* v. *Baker,* 51 *N. J. Eq.* 49; 26 *Atl. Rep.* 324; *In re Walsh's Estate,* 80 *N. J. Eq.* 565; 74 *Atl. Rep.* 563; *Clark Thread Co.* v. *The William Clark Co.,* 55 *N. J. Eq.* 658; 37 *Atl. Rep.* 599; *Perth Amboy Dry Dock Co.* v. *Crawford,* 103 *N. J. L.* 440; 135 *Atl. Rep.* 897; *Nuzzi* v. *United States Casualty Co.,* 121 *N. J. L.* 249; 1 *Atl. Rep.* (2d) 890.

The first phase presents a bar to the subsequent action; the second, an estoppel by judgment from taking a position in the subsequent action inconsistent with the determinations of the prior one. The doctrine applies alike to decrees of courts of equity and judgments of courts of law, and the final determination in either court may be invoked as a bar or

estoppel in the other. *Hoboken, &c., Railroad* v. *Hoboken,* 76 *N. J. L.* 122; 68 *Atl. Rep.* 1098. -

Turning now to the case at bar, the relief sought to be obtained in the Chancery suit was the cancellation or reformation of the temporary mortgage of $2,900 then of record; the enjoining of any action either at law or in equity upon, or the assignment of the promissory notes and mortgage, and the specific performance of the agreement to lend the $5,800 in accordance with its terms. It was because of the assignability of the notes and mortgage that the Court of Chancery took jurisdiction of the controversy. *Jacobson* v. *First National Bank of Bloomingdale, supra,* for if the relief prayed for was to compel the specific performance of the agreement to lend money without more, there would be no equity and the bill would have been dismissed. *Conklin* v. *Peoples Building and Loan Association,* 41 *N. J. Eq.* 20; 2 *Atl. Rep.* 615.

The statement that a court of equity once having assumed jurisdiction of a cause on any equitable ground will reach out and determine the entire subject-matter, to the end that all matters involved in the litigation between the parties or growing out of and connected with the subject-matter of the suit are finally disposed of, even though it is thereby required to pass upon strictly legal questions (10 *R. C. L.* 370, ¶ 120), is not an inflexible rule which the Court of Chancery is bound to follow in every case that comes before it. *Shaw* v. *G. B. Beaumont Co.,* 88 *N. J. Eq.* 333; 102 *Atl. Rep.* 151. It is only where the decision of legal questions is incidental or essential to the determination of the equitable questions that a Court of Chancery can deal therewith. *Shaw* v. *G. B. Beaumont Co., supra.* The unliquidated and intangible damages alleged to have been suffered by the plaintiffs in the action at law were not incidental or essential to the determination of the Chancery proceeding and would have been denied had they been prayed for in that action for such "damages cannot be ascertained by the conscience of the Chancellor." *Palys* v. *Jewett,* 32 *N. J. Eq.* 302.

In *Iszard* v. *Mays Landing Water Power Co.,* 31 *N. J. Eq.* 511; *affirmed,* 34 *N. J. Eq.* 556, the complainant prayed that the defendant be decreed specifically to perform an agreement

to furnish water according to the intent and meaning of the contract, and to pay the damages sustained by its cutting off of the water supply. The court decreed specific performance but as to damages resulting from the breach said "though this court has, in a suit for specific performance, jurisdiction to award compensation for any deficiency in the title, quantity, quality, description or other matters touching the estate, it has not jurisdiction to award damages for the breach of a contract, except as ancillary to a specific performance or some other relief." *Cf. Red Jacket Tribe* v. *Hoff*, 33 *N. J. Eq.* 441.

In *Reilly* v. *Roberts*, 34 *N. J. Eq.* 299, specific performance of a contract to remove an encumbrance or cloud upon the title was decreed, but complainant's claim for damages arising from the breach of the agreement was denied as a claim beyond the realm of the Court of Chancery.

In *Stanford* v. *Lyon*, 37 *N. J. Eq.* 94, a mandatory injunction was granted compelling the defendants to remove and abate an obstruction, but the prayer for damages which were allegedly sustained in consequence of being deprived of the way, was denied upon the ground that such claims cannot be admeasured under the authority of the Chancellor.

To the same effect is *Alpaugh* v. *Wood*, 45 *N. J. Eq.* 153; 16 *Atl. Rep.* 676, where the court held that a demand for unliquidated damages is not cognizable in a court of equity.

The claim or demand in the Chancery proceeding between these parties was the specific performance of the agreement to lend the money with the incidental prayers for relief above noted. The demand in the law action is for unliquidated damages allegedly arising from the breach of the agreement and the defendant's failure to perform until compelled to do so by the Court of Chancery. Identity of the claim or demand is lacking and the case falls within the second phase of the rule of *res judicata*. As between the parties and their privies, the questions of the validity of the contract and its breach by the defendant bank have been finally determined by the Chancery decree, but the plaintiffs are not barred by that decree from prosecuting the present action at law for the recovery of the alleged unliquidated damages.

The defendant's motion for judgment upon the pleadings is denied, with costs.