## HARDING et al. v. TAUBEL.

(Circuit Court of Appeals, Third Circuit. September 30, 1924.)

No. 3134.

**I. Contracts ☞245(2) — Written agreement conclusively presumed to constitute whole undertaking, and to be merger of oral agreements.**

When parties have deliberately put agreement into writing, in terms importing legal obligation without uncertainty, it is conclusively presumed that their whole undertaking, its extent and manner, was reduced to writing, and oral agreements are presumed merged in writing.

**2. Evidence ☞385 — Parol evidence not admissible to vary terms of written instrument, except for fraud, accident, or mistake.**

In absence of fraud, accident, or mistake, parol evidence may not be admitted to contradict or vary terms of written instrument.

**3. Evidence ☞417(9) — Parol evidence rule does not apply, where part only of oral contract reduced to writing.**

Parol evidence rule does not apply, where original contract was verbal and entire, and a part only of it reduced to writing.

**4. Evidence ☞417(12)—Memorandum of purchase of yarn held to refer to extrinsic matter, and to render parol evidence that sale was by sample admissible.**

Where acknowledgment of order for yarn given to salesman contained the language, "as given our Mr. Reynolds," held, extrinsic matter was referred to, and, in action on such contract, parol evidence was admissible to show that yarn to be furnished was to be of same quality as that covered by comparatively small order of few days previous, accepted merely as sample.

**5. Sales ☞119—Failure of yarn purchased to comply with order held to justify cancellation.**

Where yarn ordered was to be 36-gauge and two-ply, and that shipped consisted in part of 36-gauge and four-ply, purchaser was justified in canceling order.

In Error to the District Court of the United States for the Eastern District of Pennsylvania; Charles L. McKeehan, Judge.

Action by Charles L. Harding and Newell Tilton, copartners trading as Harding, Tilton & Co., against Lewis E. Taubel. Judgment for plaintiffs in an insufficient amount, and they bring error. Affirmed.

Stevens Heckscher, Claude C. Smith, and Duane, Morris & Heckscher, all of Philadelphia, Pa., for plaintiffs in error.

Robert T. McCracken and Roberts & Montgomery, all of Philadelphia, Pa., for defendant in error.

Before WOOLLEY and DAVIS, Circuit Judges, and BODINE, District Judge.

DAVIS, Circuit Judge. On December 22, 1921, a contract of which the following is a copy was entered into by plaintiffs and defendant:

"Boston, Mass., Dec. 22, 1921.
"Confirmation of Order No. 4–7253
"Lewis E. Taubel, Norristown, Pa.:
"We have entered your order of the 21st as our 4–7253, as given our Mr. J. M. Reynolds for 25,000 lbs. 36/2 'RP' royal lustre mercerized cones.

"Payable in New York or Boston funds only from Nyanza Mills. Price $1.00 f. o. b. Woonsocket, R. I. Terms, 2% 10th prox. Freight paid to Norristown, Pa.

"Deliveries, about 5,000 lbs. monthly, beginning January

"All to be taken by June, 1922.
"Shipping directions as above. A. H. G.
"Very truly yours,
　　　"Harding, Tilton & Co.,
　　　"By [Signed] Karl M. Nelson.
"This is in accordance with our understanding.
　　　"[Signed]　Lewis E. Taubel."

Printed at the bottom of this letter, and separated from the body of it, was, among other things, the statement that "all agreements made in connection with this transaction are specified on this acknowledgment."

Late in December, 1921, or early in January, 1922, plaintiffs delivered 5,050 pounds of this order, of which the defendant used 1,564 pounds, which at the contract price, less certain credits, amounted to $1,439.02. In using four cases of this installment, de-

fendant broke 2,000 needles, which were valued at $80. He notified plaintiff of this fact, and threatened to return the balance and cancel the contract, because, as he contended, the material did not comply with a sample of 300 pounds purchased December 9, 1921, but, upon request of plaintiffs' salesman, he used three more cases, making seven cases in all. These three cases proved to be the same in character as the other four, and so on February 18, 1922, the defendant returned the balance of the 5,050 pounds, and went into the open market and purchased 25,000 pounds of similar yarn at $1.05 per pound, 5 cents per pound more than he was to pay plaintiffs. Defendant contends that plaintiffs expressly warranted the bulk purchased on December 22, 1921, to be of the same quality as the sample of 300 pounds, while plaintiffs contend that the purchases on December 9th and 22d were separate, distinct, and independent.

At the trial the court adopted the theory of the defendant, and admitted evidence tending to show that the bulk was not of the same quality as the sample, and accordingly charged the jury which rendered a verdict, in substance for the defendant, but in form for the plaintiffs in the sum of $187.22. This amount was the excess admittedly due plaintiffs for the yarn delivered over and above the counterclaim allowed defendant for damages because the bulk did not comply with sample.

The plaintiffs filed a motion for a new trial, but this was denied. While the learned trial judge concluded that he had erred in admitting evidence of an express warranty, and in submitting that question to the jury, he said:

"I also think that these errors were not prejudicial to the plaintiff, because the defendant was entitled to introduce evidence that the sale was by sample, and was entitled to instructions that, if it was a sale by sample, then there was an implied warranty that the bulk order should correspond in quality with the sample. In other words, what was submitted as a question of express warranty should have been submitted as a question of implied warranty; but the terms of both warranties were the same."

It is true that section 16 of the Pennsylvania Sales Act of May 19, 1915 (P. L. 543; Pa. St. 1920, § 19664), provides that, "in a case of a contract to sell or a sale by sample: (a) There is an implied warranty that the bulk shall correspond with the sample in quality." The real question, however, is whether or not the sale was by sample.

Plaintiffs urge that the sale was not by sample, because the agreement was deliberately put into writing, which contains the whole of their undertaking, and that does not refer to a sale by sample. They further say this very order expressly provides that "all agreements made in connection with this transaction are specified on this acknowledgment."

[1, 2] When parties have deliberately put their agreements into writing in such terms as import a legal obligation, without any uncertainty as to the object or extent of their engagement, it is conclusively presumed that their whole undertaking, its extent and manner, was reduced to writing, and all "oral agreements which the parties may have made before or at the time of the execution of the written contracts are regarded by the law to be merged in the writing." Rash v. Shower Bros. (C. C. A.) 288 Fed. 819; 1 Greenleaf on Evidence (16th Edition) § 275; Dewitt v. Berry, 134 U. S. 306, 315, 10 Sup. Ct. 536, 33 L. Ed. 896; Northern Assurance Co. v. Grand View Building Association, 183 U. S. 308, 318, 22 Sup. Ct. 133, 46 L. Ed. 213; Etna Forge & Bolt Co., etc., v. Youngstown Sheet & Tube Co., etc. (C. C. A.) 282 Fed. 786. Therefore, in the absence of fraud, accident, or mistake, not here alleged, parol evidence may not be admitted to contradict or vary the terms of a written instrument. The provision that "all agreements made in connection with this transaction are specified on this acknowledgment," is doubtless a printed protection that goes out with all of the plaintiffs' letters on every subject.

If the writing here is complete, and shows the extent and manner of the undertaking of the parties, either with or without the above provision, parol evidence that this was a sale by sample, and that the bulk did not correspond in quality with the sample, was inadmissible. The evidence establishes that there are several grades of mercerized yarn. The so-called sample was all of two-ply and free from slugs; but the bulk was mixed, some two-ply and some four-ply, and contained slugs. In trying to use four bales of the mixed, as above stated, the defendant broke 2,000 dial needles. The contract and evidence show that defendant thought that the bulk order was to be of the same quality as the 300 pounds previously purchased, for, when he began to have trouble on account of the mixture, he wrote, January 12, 1922, complaining about the four-ply and the slugs which were on the yarn, and stated that he would try a

few more cases, and if they worked the way the one he was then working did, he would return the balance and cancel the order. The plaintiffs' salesman, Mr. J. M. Reynolds, then called on defendant once or twice and urged him to give the yarn further trials. He did so, and again wrote plaintiffs on January 27, 1922, stating that he had tried a few more cases, but they were just the same as the others, and asked for shipping instructions to return the yarn; but he did not receive a reply to this letter and so on February 18, 1922, he wrote again as follows:

"On January 27 I wrote you regarding the 36/2 yarn which I purchased from you on approval of one case. This yarn did not turn out to be as good as the sample case, which Mr. Reynolds knows, as he took with him 5 or 6 cones from the mill which were mixed with four-ply. On another occasion he took another lot of 5 or 6 cones with four-ply and also badly wound. I told him that I would not use any more of it, and was going to return it and cancel the balance of the order. I wrote you to give me shipping instructions, and you failed to do it, so I will return the balance of that lot on February 23 if I do not hear from you by that time. Trusting you will give this your immediate attention," etc.

By this time plaintiffs had consulted counsel and the tone of their letters changed. Two days later they answered, and refused to consent to the cancellation, saying:

"Your letter dated February 18th is at hand. We refer to our contract with you, order 4–7253, dated December 22, 1921. We are not willing and will not allow you to return any of the yarn shipped you on this contract. We consider that we have made a good delivery and that you have no cause to cancel any part of this contract. We have held the February deliveries at your request, but we are not willing to defer these deliveries for a longer period. We have the yarn ready for delivery, and we must insist that you live up to the terms of the contract, and take the yarn as ordered. We have placed this matter in the hands of our attorneys, Messrs. Duane, Morris & Heckscher, and we trust that you will not make it necessary for us to instruct them to proceed against you."

Shipping instructions were not furnished on February 23d as requested, and on February 24th defendant returned the 50 cones which he then had on hand.

Defendant testified in substance that he purchased the 300 pounds of yarn as a sample; that he found it satisfactory and gave the bulk order on December 22, 1922, on the representation and express warranty of Mr. J. M. Reynolds that the bulk would correspond in quality with and be equal to the sample. This would seem to be in accordance with the fact, for the size of the two orders, 300 pounds and 25,000 pounds, are so disproportionate as to be unreasonable on the theory that they were unrelated, in the absence of any other explanation. The conduct of the parties is the best commentary on the truth of their contract. Immediately after the defendant began to use part of the bulk, he wrote defendant that it did not "compare with the first case you shipped me *on trial.*" This shows that the first case was a sample, and shipped "on trial." The inferior and unsuitable quality of the bulk is not denied.

The plaintiffs never hinted that the order of December 9th was not to be regarded as a sample until after attempts to induce defendant to use the yarn had failed and counsel had been consulted. Then plaintiffs seem to have looked around for a legal defense, and evolved the theory for the first time that the bulk order of December 22d was independent, unrelated to the sample, and complete in itself. Whether or not it was complete in itself, and shows with certainty the extent and manner of the undertaking, is the final question. The letter on which plaintiffs rely is called an "acknowledgment" of the "order," with all its terms and conditions, which the defendant had given to their agent the day before. The plaintiffs did not reject or even modify the order, but entered it just *"as given our Mr. J. M. Reynolds."* At the foot of the written part of the letter, immediately following the plaintiffs' signature, and before the lower printed provision, defendant signed the statement that "this is in accordance with our understanding," to wit, that the plaintiffs had entered his order exactly *as* it had been given to Mr. Reynolds. Leading grammarians treat the word "as," among other parts of speech, as a relative adverb, and cite such passages as the following to illustrate that use:

"I cannot say how the truth may be;
But I tell the tale *as* 'twas told to me."

"Keep to the right *as* the law directs."

"Do *as* you are told."

It was doubtless the understanding of both parties that the order had been entered just "as," with the exact terms, it had been given to Mr. Reynolds. The letter acknowledging the order identifies the yarn,

but does not specify anything as to its quality with reference to the sample. The order given Reynolds, defendant says, did so specify, and it was so entered. The extent and manner of the undertaking of the parties are referred to, but not set out, in the writing. We do not know what is embraced within the words "as given our Mr. J. M. Reynolds."

[3, 4] The rule against the admission of parol evidence to vary written instruments does not apply "to cases where the original contract was verbal and entire, and a part only of it was reduced to writing." 1 Greenleaf on Evidence (18th Ed.) § 284; Work v. Beach, 13 N. Y. Supp. 678;[1] 129 N. Y. 651, 29 N. E. 1028; Taliaferro v. Ackerman, 73 Pa. Super. Ct. 539. The letter or order itself refers to extrinsic matter, parts of the contract, not included in the order, and parol evidence is admissible to explain the missing parts thus referred to. Standard Sewing Machine Co. v. Leslie, 78 Fed. 325, 24 C. C. A. 107; Wolff v. Wells, Fargo & Co., 115 Fed. 32, 52 C. C. A. 626; 22 Corpus Juris, 1181. Therefore it was not erroneous to admit the evidence to show exactly what the contract was.

[5] Defendant ordered "36-2," which means a 36-gauge and two-ply in number, but the evidence discloses that part of the bulk shipment was two-ply and part four-ply. This mixture was not denied. An attempt was made by plaintiffs to explain how four-ply yarn would appear in two-ply cones, by saying that "one thread will break down and the two run together; one will blow over and they will wind together and make four-ply"; but plaintiffs' own testimony establishes that the "delivery of four-ply yarn would not be a delivery of two-ply yarn." The yarn delivered on the bulk order, therefore, did not comply with the order of acknowledgment, and defendant was justified in canceling the order on this ground.

We think that the position taken by the learned judge at the trial was without error. If there was an express warranty, as the jury found, there could not be an implied warranty. Dewitt v. Berry, supra. Since the bulk order, therefore, did not comply with the sample, and the delivery did not comply with the written acknowledgment of the order, the judgment of the District Court is affirmed.

---

[1] Reported in full in the New York Supplement; not reported in full in 59 Hun, 625.