### LICHTER et al. v. WESTINGHOUSE ELECTRIC MFG. CO.
### No. 9599.

Circuit Court of Appeals, Sixth Circuit.

Feb. 8, 1944.

598

Paul W. Steer, of Cincinnati, Ohio (Paul W. Steer and Steer, Strauss & Adair, all of Cincinnati, Ohio, on the brief), for appellants.

Walter M. Shohl, of Cincinnati, Ohio (Walter M. Shohl, and Dinsmore, Shohl, Sawyer & Dinsmore, all of Cincinnati, Ohio, on the brief), for appellee.

Before ALLEN, HAMILTON, and McALLISTER, Circuit Judges.

McALLISTER, Circuit Judge.

Appellant company submitted a written offer to do the masonry work for the Fluorescent Lamp Plant which the Westinghouse Company was building at Fairmount, West Virginia, for $78,000. The offer was accepted and a written contract entered into between the parties. The construction work was subsequently completed and paid for. Thereafter, appellant company claimed that, by virtue of an agreement, resting partly in parol and partly integrated in the above-mentioned written contract, it was also entitled to do the masonry work on an adjoining Glass Plant. When the Westinghouse Company, itself, carried out this latter work, appellant company sued for loss of profits resulting from alleged breach of contract.

On the trial, appellant company sought to introduce evidence of a parol agreement entered into between the parties prior to the execution of the written contract for the Lamp Plant. By this parol agreement, it was claimed that Westinghouse, in consideration of appellant company's reduction of price from that which was first submitted for the construction work in the Lamp Plant, agreed that appellant company would also have the masonry contract in seven other buildings, at the same prices per masonry unit as governed the Lamp Plant. These additional buildings were shown in outline on a plot-plan layout, which was submitted to appellant company by the Westinghouse Company, and included the proposed Glass Plant. The cost of the Glass Plant, based on the masonry units, required, would amount to $87,688.82, according to the claim of appellant company. The district court ruled evidence of such purported oral contract inadmissible as being in violation of the Parol Evidence Rule. Because of the holding, appellant company was unable to prove the alleged contract for the Glass Plant and, accordingly, failed in establishing its claim to damages for breach of such contract.

On appeal, it is the contention of appellant company that there was one over-all oral contract between the parties for the masonry construction work in the Lamp Plant, the Glass Plant, and the adjoining buildings; that only part of the oral agreement—that relating to the Lamp Plant—

was subsequently reduced to writing; that the Glass Plant agreement remained an oral contract, although the prices agreed upon for the masonry units in all the buildings were expressly integrated in the written Lamp Plant contract; and that the Glass Plant agreement could, therefore, be proved by parol evidence.

It appears that the parties carried on negotiations for some time before the written contract was executed. An offer in writing was submitted by appellant company to the Westinghouse Company, March 28, 1941, in which appellant company proposed to furnish all labor, tools, machinery, equipment, and materials necessary for the completion of the masonry work in the Fluorescent Lamp Plant, in accordance with the specifications, for the lump sum of $78,000. The offer further set forth that certain designated unit prices for masonry work "shall govern for additions or deductions to the work shown on the plans herein referred to *or for work in adjoining buildings on the same property.*" (Italics supplied.) It was also set forth in the offer that the Westinghouse Company should have the right to "increase or decrease the quantities shown at the unit price quoted."

On April 8, 1941, the written contract was submitted to appellant company, and thereafter, on May 16, 1941, executed. It, like the offer, provided that the work on the Lamp Plant would be completed for the sum of $78,000; that unit prices set forth in the contract "shall govern for additions or deductions to the work shown on the plans herein referred to *or for work in adjoining buildings on the same property.*" (Italics supplied.) The Glass Plant was one of the adjoining buildings on the same property.

Testimony on behalf of appellant company with regard to the Glass Plant contract, was limited by the trial court to proof that appellant company originally proposed to do the masonry work on the Lamp Plant for $86,737; that the amount was reduced to $78,000 by appellant company; that the officials of both companies discussed the Glass Plant in connection with the reduction in price of approximately $8,000 in the proposal to do the work in the Lamp Plant; and that as a result of the proposal to do such work for $78,000, instead of $86,737, the written contract, herein referred to, was executed.

On the trial, counsel for appellant company offered evidence to prove that the Westinghouse Company, in order to induce appellant company to cut its price for the masonry work in the Glass Plant from $86,737 to $78,000, orally promised appellant company the contract for the masonry work in the Glass Plant and in six other buildings adjoining the Lamp Plant, and that the parties further agreed that the unit prices for the masonry work (prices which appellant company would receive for supplying materials, and erecting the various tile partitions and brick-tile walls) would be the same for the Glass Plant as those in the Lamp Plant contract. Appellant company also offered in evidence a letter received from Westinghouse · subsequent to the execution of the Lamp Plant contract, reciting that the Glass Plant was to be of the same construction and contain the same number of units as the Lamp Plant. This proffered evidence was ruled inadmissible, as were all parol statements with reference to the Glass Plant, which were alleged to have been made by officials of Westinghouse before the execution of the contract for the Lamp Plant. Furthermore, proof was offered, and rejected, that Westinghouse officials had ordered appellant company to bind prices for the purchase of tile and brick to be used in the Glass Plant and the other adjoining building; that such orders were thereupon given by appellant company; that about 5 days after the execution of the Lamp Plant contract, appellant company inquired when the masonry work would commence in the Glass Plant; and that the Westinghouse Company thereupon advised appellant company, by letter, that the brick work would not start until approximately six months thereafter. Subsequent to the contract for the Lamp Plant, appellant company was given the contracts for six of the other buildings, but was refused the Glass Plant contract.

Appellant company contends that the written contract was incomplete on its face and that oral statements and negotiations were admissible to prove that part of the agreement not expressed by the writing. That is the issue.

■ Turning, then, to an examination of the contract, we find that, in the first paragraph, appellant company agreed to supply the materials and do the masonry work in the Lamp Plant according to the plans and specifications, at a stated price. At-

tached to the contract was a rider to Article I, stating that certain unit prices should govern "for additions or deductions to work shown on the plans herein referred to or for work in adjoining buildings on the same property." There is no other reference in the written contract to the work in the adjoining buildings, but a plot plan, showing in outline the Lamp Plant and several other buildings, including the Glass Plant, is referred to and made a part of the contract. This rider provision, therefore, bound appellant company on the extras to the masonry work in the adjoining buildings at a specified price, and bound Westinghouse to pay for the work that was done.

Because of the reference in the written Lamp Plant contract to the masonry work and the cost thereof, in the adjoining buildings, appellant company contends that this envisages an oral contract to do the work in the adjoining buildings, and that it has the right to show what that contract was. Westinghouse insists that the Lamp Plant contract reduced the oral statements and negotiations to writing; that it is complete on its face; and that since it embodies the whole agreement between the parties, no evidence of prior oral agreements is admissible. But appellant company asks: What about the masonry work in the other buildings, which is referred to in the written contract for the Lamp Plant? That work, it insists, it was entitled to do by reason of the prior oral agreement made by Westinghouse; and it contends that the written contract providing for the prices governing masonry units to be furnished in such buildings, imports an additional agreement, and that it is thereby entitled to show what that additional agreement was, with regard to the other buildings.

■ Standing alone, the rider provision of Article I, referring to and governing unit prices for masonry work in the other buildings, indicates, on its face, that it does not express the entire understanding between the parties. It relates to additions and deductions to work in the adjoining buildings and the prices to be charged for extras and reductions for omissions. There must have been some matter to which there could have been the additions or deductions referred to. The rider suggests that the parties have negotiated with reference to such other buildings. It envisages and implies contractual provisions and relationships not included in the written contract. It opens to speculation, queries as to whether such provisions might be optional with one party, or enforceable by both, or whether they apply to certain buildings or to all the buildings. And, unless supplemented by other provisions of the written contract, the rider provision leaves the agreement patently incomplete, and does not purport to express the entire understanding of the parties. In such a case, extrinsic evidence is admissible to prove the part of the contract not expressed by the writing. Harding et al. v. Taubel, 3 Cir., 1 F.2d 614.

To the foregoing conclusion, appellee, however, responds that appellant company was merely permitted to do the masonry work in the adjoining buildings, on written order, by reason of an optional right retained by Westinghouse Company, according to Article XII of the written agreement; that parol evidence to the effect that appellant company was to have the contracts on the other buildings, contradicts the express stipulation in Article XII that it was to have such work only on written order at the option of appellee; that the written contract, therefore, completely embodies the understanding of the parties; and that parol evidence of other agreements is inadmissible.

Article XII of the contract provides: "That the Principal may at any time during the progress of the work require any deviation from, addition to, or omission in the plans and specifications without giving notice to the surety hereinafter required and the Contractor agrees to make such changes of whatever character they may be as part of this contract; and in case such changes shall make the work more or less expensive than that originally required, a proportionate addition or deduction shall be made from the contract price hereinafter agreed to be paid; that the Architect or Principal shall fix the time to be allowed the Contractor on account of such changes, also the amount of the said addition to or deduction from the contract price, whose decision shall be final and without appeal, except that the Principal may at its option order the work to be proceeded with on force account. All extra work shall be done according to the provisions relating to the original work and shall only be done at the written order of the Principal, otherwise no charge can be made or collected therefor."

Appellant company argues that Article XII refers only to the masonry work to be performed in the Lamp Plant, and that its provisions relating to extras and optional rights of appellee to do the work do not pertain to the other buildings. In the light of these contentions, it is to be observed that while the application of the parol evidence rule still remains in issue, emphasis shifts to a disputed construction of the terms of the written agreement.

■ We come, then, to an examination of the paragraph in question. Under Article XII of the contract, the right of Westinghouse to require deviations, additions, or omissions in "the plans and specifications" appears to refer to the plans and specifications for the Lamp Plant. Those were the only ones that had been previously mentioned in, and made a part of, the contract. Appellant company had in its hands no plans or specifications for the Glass Plant—and they probably were not in existence at the time. The provisions that the contractor agrees to make "such changes" refers to the changes in plans and specifications for the Lamp Plant; as does the stipulation that "in case *such changes* shall make the work more or less expensive than that originally required, a proportionate addition or deduction shall be made from the *contract price,* hereinafter agreed to be paid." The additions or deductions to be made from the contract price relate to the contract price for the Lamp Plant, as that is the only contract price mentioned in the written contract.

The principal also had the option to do certain work; but such work was limited to that resulting from changes in the plans and specifications in the Lamp Plant. For these, it could set the time to be allowed the contractor to make such changes, fix the amounts to be added to or deducted from the contract price, or to do the work, itself.

■ With regard to the last sentence of Article XII, all extra work was to be done *according to the provisions of the original work,* and only on written order of the Westinghouse Company. The sole provisions in the contract, concerned with extra work, are those found in the rider provision, heretofore discussed. They apply to additions or deductions to the work shown on the plans for the Lamp Plant, or for work in adjoining buildings on the same property. The rider provision in Article

I sets forth specifically how much the price will be increased or reduced for each square foot of partition or wall added or deducted. It governs extra work in the Lamp Plant and adjoining buildings. Appellant company does not claim that it is entitled to do extra work, or that extra work could be done without written orders from the appellee. The provision as to extra work, in Article XII, does not bring all of the masonry work in the buildings, adjacent to the Lamp Plant, under the classification of additions to the Lamp Plant, requiring written orders as extra work. Its only reasonable meaning is that if extra work would be required in addition to the masonry work,—that presumably was to be done thereafter in accordance with plans and specifications in the other buildings— the price schedule for such extra work should be that set forth.

■ While the Glass Plant was shown in outline on the plot plan, which was made a part of the contract, it was designated therein as a "future" building, and specifications for it apparently had not then been prepared. But, in all reasonable probability, plans and specifications were intended to be drawn up before it was to be constructed, and appellant company, thereafter, requested delivery of them. If, at the time of the execution of the contract here in question, such plans and specifications were not yet in existence, the reference in the written contract to additions and deductions for work in such building, would obviously refer to those which might be added to or deducted from future specification requirements. Without a construction, as above suggested, the provision relating to deductions would seem to be meaningless, for there would be no reason to provide for reduced prices for deductions made for masonry work in the other buildings, if all the masonry work for such buildings was to be considered only extra work to be executed on written order.

To appellee's argument that the language of the rider provision must be read in connection with the stipulation in Article XII covering the extras, to the effect that the masonry work in the adjacent buildings came under the classification of extra work to be done only on the order, and at the request, of appellee, the most favorable observation that could be made is that, in this regard, the contract is ambiguous. In such a case, parol evidence would be admissible to show what the parties agreed

to. See Haas Bros. v. Hamburg-Bremen Fire Ins. Co., 9 Cir., 181 F. 916. But we do not rest our determination on the ground of ambiguity in the agreement.

From the written contract, we conclude that the provisions in Article XII, with reference to extra work, apply, as far as relates to the Glass Plant, only to extra work beyond that to be required by the plans and specifications for the plant. The remainder of Article XII is concerned only with the Lamp Plant, and does not reserve the optional right in appellee to authorize the masonry work to be done in the Glass Plant and the other buildings. Appellee's contention that Article XII merely permitted the masonry construction work to be done in the Glass Plant, on written order, is without merit. Without such a limitation, as is claimed by appellee, in Article XII, we have, then, only the rider provision referring to and governing the increased or reduced prices for additions or deductions—that is, for extra work—in the other buildings. As above stated, this provision imports contractural stipulations not included in the written contract, and extrinsic evidence, not in conflict with such contract, is admissible to supply that part of the agreement between the parties not expressed in writing.

It is argued by appellee that, in the buildings other than the Lamp Plant, the masonry work was furnished by appellant company, on written order from Westinghouse, and in accordance with the provisions of the written contract governing the extras. This, it is contended, is proof of the fact that the parties understood, and acted upon the premise, that the work in the other buildings was to be performed only at the request and with the permission of appellee. Such may be the case, and evidence to sustain this contention tends to disprove the claim of appellant company to the contrary. But it is, properly, an argument on the facts, addressed to the proposition that there was no agreement that appellant company would have the masonry contracts for all the buildings—or that there was only an understanding that appellee would have the option to permit appellant company to do such work at the prices to which appellant company bound itself. It may be said, however, that while certain of the evidence may tend to sustain the foregoing argument of appellee, it is not of so incisive a nature as to be free from doubt; and it is opposed by other testimony, or inferences to be drawn therefrom.

In view of the incomplete nature of the written contract and its references to the extrinsic matter of the other projects, heretofore mentioned, evidence of the claimed oral contract, which was excluded by the district court, was properly admissible as part of appellant company's case.

The judgment of the district court is, therefore, reversed and the cause remanded for a new trial in accordance with this opinion.