## UNITED STATES SHIPPING BOARD EMERGENCY FLEET CORPORA-
## TION v. PENSACOLA LUMBER & TIMBER CO.

(Circuit Court of Appeals, Fifth Circuit.  June 13, 1923.)

No. 4050.

**Shipping ⬅125—Shipper held not entitled to prompt and direct carriage or damages for delay.**

Agreement, "we confirm engagement to-day of 600,000 superficial feet sawn p. p. timber * * * per S. S. first class U. S. Shipping Board steamer for Pensacola to Liverpool, England," etc., *held* not to entitle shipper to have goods carried promptly and directly by steamer to Liverpool, and it was not entitled to recover damages by reason of decline in the market value of the timber during shipment.

Appeal from the District Court of the United States for the Northern District of Florida; William B. Sheppard, Judge.

Libel by the Pensacola Lumber & Timber Company against the United States Shipping Board Emergency Fleet Corporation. Decree for libelant and libelee appeals.  Reversed.

Fred Cubberly, U. S. Atty., of Gainesville, Fla., and G. E. Hoffman, Asst. U. S. Atty., of Pensacola, Fla. (J. Frank Staley, Sp. Asst. Atty. Gen., Fred Cubberly, U. S. Atty., of Gainesville, Fla., and George Earl Hoffman, Asst. U. S. Atty., of Pensacola, Fla., on the brief), for appellant.

Francis B. Carter, of Pensacola, Fla. (Carter & Yonge, of Pensacola, Fla., on the brief), for appellee.

Before WALKER, BRYAN, and KING, Circuit Judges.

WALKER, Circuit Judge.  By the libel in this case the appellant, United States Shipping Board Emergency Fleet Corporation, was charged with liability for the alleged breach of an alleged written contract made on March 24, 1920, between appellee and appellant, "by its duly authorized agents, John A. Merritt & Co.," which stipulated as follows:

"We confirm engagement today of 600,000 superficial feet sawn p. p. timber and/or lumber per S. S. first class U. S. Shipping Board steamer for Pensacola to Liverpool, England, at forty ($40.00) dollars per thousand su. ft. underdeck prepaid delivery as required by steamer first half April loading."

That instrument contained the following provisions:

"This contract is made upon the express condition that it is subject to all the clauses and conditions in the ocean bill of lading used by the particular vessel on which the goods go forward, which bill of lading is made a part of this contract and copy of same will be furnished on application. * * * Steamer has privilege of forwarding to destination via other ports in America or Europe. * * *"

The alleged breach complained of was a failure to comply with the engagement for freight space on a Shipping Board steamer during the first half of April; the alleged agents not having furnished a vessel for that purpose until June 26, 1920.  The answer to the libel put in

⬅For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

issue its allegations to the effect that John A. Merritt & Co. (herein referred to as the agent), were agents of the appellants, having authority to bind it by the above-quoted contract, and on other grounds denied the asserted liability. The evidence showed the following: On February 20, 1920, appellant by telegram to the agent assigned to the latter "Pensacola Liverpool berth." On March 9, 1920, appellant by written instrument appointed the agent its agent "for the management, operation, and conduct of the business of such vessels as it has assigned and may assign to the agent for such purposes." That instrument contains provisions to the effect that the agent shall be subject to the orders of appellant as to all matters affecting the use of the vessels, when the appellant deems the exercise of such power to be in the public interest, and that the agent agrees to issue, or cause to be issued, to shippers the customary charter parties, freight contracts, and bills of lading, except as otherwise prescribed by appellant, and shall exercise reasonable care to see that such bills of lading, when not prescribed by appellant, shall contain all exemptions and stipulations usual in the particular trade or service in which the vessel may be engaged. Appellant's representative at Pensacola, in a communication to the agent, dated April 8, 1920, quoted the following telegram received by such representative from Mr. Keene, an official of appellant:

"Neshaminy eighty-eight hundred tons deadweight assigned John A. Merritt & Co., managing agents, management withdrawn from Robert Hasler Co., operation from Lykes stop. As information vessel sailed Sherness Norfolk March 21st, now assisting disabled steamer Westkerney. Have radioed master on completion assistance Westkerney proceed Gulf, if in ballast and sufficient fuel aboard if insufficient fuel vessel will proceed Jacksonville and bunker there for Pensacola."

On May 24, 1920, the Neshaminy was delivered to and received by the agent, under the agency agreement dated March 9, 1920. Prior to May 24, 1920, the Neshaminy was assigned to and under the management and operation of Robert Hasler and Lykes Bros., of New Orleans, La. No evidence adduced showed that any vessel of the appellant had been assigned to the agent when the above-mentioned contract of March 24 was entered into, or that space on any Shipping Board vessel was then available to or subject to be disposed of by the agent. On June 24, 1920, the Neshaminy, after undergoing repairs at Norfolk, arrived at Pensacola for the reception of cargo. Thereupon the goods mentioned in the contract of March 24 were loaded on that vessel for carriage to Liverpool, and on June 30th the master of that vessel signed a bill of lading therefor in the form used by that vessel. That bill of lading provided:

"That the shipowner shall not be held responsible for loss, damage or delay wheresoever occurring, caused directly or indirectly by reasonably unavoidable delay of the vessel to repair or renew hull or machinery."

By the terms of that instrument the goods shipped were to be transported by the Neshaminy or a following steamer, and the rights were reserved for the vessel to proceed to Liverpool via any other port or ports, in any order or rotation, outwards or forward, whether in or

out of, or in a contrary direction to or beyond the customary or advertised route, without the same being deemed a deviation, whatever may be the reason for calling at or entering such port or ports; to altogether depart from the customary route, or make, in substance, another and different voyage; to tranship or land and reship the goods at ports of shipment and transhipment, or at any other port or ports, into any other steamer or steamers, or sailing vessel; and to forward to destination by another vessel. So far as appears the appellant had not, when the bill of lading was issued, been informed of the contract sued on.

It does not seem to the writer that the contract sued on is enforceable against the appellant. So far as appears, when that contract was made by the agent on March 24, no Shipping Board vessel had been assigned to the agent or was in its possession or subject to its control. The terms of the subsequently made agency contract do not indicate that the appellant consented to be bound by any engagement for freight space entered into by the agent before that contract was made. The circumstances of the giving of notice on April 8th of the assignment of the Neshaminy to the agent plainly negative the conclusion that the appellant then understood or contemplated that that action would have the effect of obligating it to have that or another vessel at Pensacola for loading during the first half of April. It seems to the writer that the authority conferred on the agent was not exercisable before any Shipping Board vessel was assigned to it or came under its control, that the engagement sued on was entered into by the agent when it had no power to obligate appellant to have a vessel at Pensacola for loading within a specified time, and that no evidence adduced showed that, by ratification or otherwise, the appellant consented to be bound by such an engagement. But the disposition of the case need not be put on this ground.

An above-quoted provision of the contract sued on had the effect of embodying in that contract all the clauses and conditions in the bill of lading issued by the master of the Neshaminy. That bill of lading provided that the shipowner shall not be held responsible for loss, damage, or delay caused directly or indirectly by reasonably unavoidable delay of the vessel to repair or renew hull or machinery. There is ground for concluding that, under the state of facts disclosed, that provision stands in the way of the enforcement of the liability asserted. But we think that another consideration requires the conclusion to which the just mentioned one points.

The decree appealed from sustained the claim of the appellee that it was entitled to recover the amount of its loss in consequence of the decline in the market price of the timber and lumber shipped between the date when it would have arrived at Liverpool if a Shipping Board steamer had been at Pensacola for loading during the first half of April, and had promptly taken aboard that timber and lumber and carried it direct to Liverpool, and the date of its actual arrival at that place. We think that above-mentioned provisions of the Neshaminy's bill of lading plainly show that it was not contemplated that the shipowner was to be liable for loss due to such delay in the arrival of the

goods in question at their destination as was complained of. It was entirely consistent with the obligation incurred for the goods in question not to reach Liverpool sooner than they did. Compliance with the engagement of freight space for those goods did not involve the carriage of them directly to Liverpool, or within the time reasonably required for a voyage of a Shipping Board steamer from Pensacola to Liverpool. The shipowner would have been within its rights in making a round about voyage resulting in the ship reaching Liverpool later than it did, or in shipping or transhipping the goods in a sailing vessel which could not reasonably have been expected to reach Liverpool as soon as the Neshaminy did. The contract sued on did not entitle the appellee to have the goods mentioned carried promptly and directly by a steamer to Liverpool. It is not entitled to recover damages for a failure to get the benefit of a service for which it did not contract.

It follows that the decree appealed from was erroneous in sustaining appellee's above-mentioned claim. That decree is reversed.

BRYAN, Circuit Judge, concurs upon the ground that a loss occasioned by a decline in the market value of lumber or timber was not within the contemplation of the parties.