PERTH AMBOY DRY DOCK COMPANY, RESPONDENT, v. HARDEN L. CRAWFORD AND JAMES W. DECKER, PARTNERS, TRADING AS H. L. CRAWFORD & COM-PANY, APPELLANTS.

Submitted October 29, 1926—Decided January 31, 1927.

1. Plaintiff commenced an action at law to recover for wharfing charges, &c., furnished to defendants under agreements for the scrapping of steel vessels. Prior to the commencement of the suit a litigation between the same parties, in which the same agreements were involved, had been begun and concluded in the Court of Chancery. *Held*—(1) that the record of the Court of Chancery was admissible in evidence at the trial of the action at law, and (2) that the determinations made in the Chancery proceeding were *res adjudicata* between the parties.

2. When agreements are silent as to the time within which the work therein specified is to be performed, the law presumes that the work is to be performed within a reasonable time. Evidence of the circumstances surrounding the parties and of the facts which have come to their knowledge at the time the agreements were made is admissible. Evidence as to the declarations and repre-sentations made by one of the parties as to what they considered a reasonable time for performance is admissible.

3. The question as to whether or not a witness called as an expert is qualified to testify as an expert is one of fact to be deter-mined by the trial judge. His finding will not be reversed on appeal if there be any legal evidence to support it.

On appeal from the Supreme Court.

For the appellants, *McCarter & English*.

For the respondent, *Wall, Haight, Carey & Hartpence*.

The opinion of the court was delivered by

KATZENBACH, J. This is an appeal from a judgment of the Supreme Court entered upon the verdict of a jury. The trial was held at the Middlesex Circuit. The defendants below, Harden L. Crawford and James W. Decker, partners, trading as H. L. Crawford & Company, are the appellants in this court. They will hereinafter be referred to as the defendants. The plaintiff below was the Perth Amboy Dry Dock Company, a corporation of this state, which will be hereinafter referred to as the plaintiff. The contracts involved in the present litigation and the circumstances surrounding the making and partial performance thereof were before this court at the May term, 1925, by virtue of an appeal made by the defendants from a decree of the Court of Chancery in a proceeding in which the plaintiff was the complainant. This court affirmed the decree of the Court of Chancery.

The plaintiff is the owner of a plant at Perth Amboy, in this state, adapted for a dry dock and general ship repair business. In December, 1923, the defendants desired to have scrapped two steel steamships, known as the "Philippines" and "Black Arrow." The plaintiff during this month entered into two agreements with the defendant for scrapping the two ships mentioned. The agreements were identical except in the name of the steamer and the amount for which the work was to be done. By these agreements the plaintiff was to furnish wharfage during the process of scrapping, gas and oxygen for cutting. use of hose and burning outfits, use of crane for handling of material, use of derrick, general supervision of work, and stage planking. The defendants were to pay for the labor, assistant foreman, day and night watchmen, labor in removing material from the shipyard, and services rendered by outside contractor for railroad. Bills for labor were to be rendered weekly and for use of plant monthly. The agreements contained no reference as to the time within which the scrapping of the ships was to be completed, and were also silent as to the size of the pieces of steel into which the vessels were to be scrapped. There were two sizes known to the trade, one called "charging box sizes," which were pieces

twenty-two inches wide by five and one-half feet in length, and the other called "shipping sizes," which were pieces not smaller than twenty feet in length by five and one-half feet in width. These matters had been considered prior to the making of the agreements and representations as to the length of time within which the scrapping could be completed and the size of the scrapped material, the plaintiff claimed, had been made to it by the defendants. The work of scrapping was commenced immediately after the contracts were made. Winter was the season in which the plaintiff had the least work at its plant. While the work was in progress the price of scrapped steel materially declined. The price subsequently fell to a point where it became unprofitable to scrap the ships and market the steel.

In the month of May, 1924, when the "Black Arrow" had been approximately eighty per cent. scrapped and the "Philippines" thirty per cent. scrapped, the defendants ceased work. The ships were left moored to the plaintiff's docks which were by that time required for the usual business done by the plaintiff at that season of the year. The plaintiff believed that it was suffering irreparable damage in its business, and, being unable to persuade the defendants to remove their ships, filed a bill in the Court of Chancery for a mandatory injunction for their removal. The proceeding in the Court of Chancery was heard and the plaintiff obtained a decree directing the defendants to remove the ships. Before the mandatory injunction was actually issued the defendants removed the vessels. The decree in this litigation, as has been stated, was affirmed by this court. This history of the Chancery litigation has been related because of its bearing in some respects upon the questions presented to this court upon the present appeal. In connection with the scrapping of the vessels the plaintiff claimed that money was owing to it from the defendants. The plaintiff thereupon commenced an action in the Supreme Court to recover damages for the use of its docks for a longer period than agreed upon, the value of extra gas and oxygen used in cutting the steel from the vessels into charging box sizes instead of shipping sizes as originally contemplated, extra and unpaid labor costs, and the

expenses incident to the saving of the "Philippines" from sinking at the dock due to a broken sea cock, &c. The suit was tried at the Middlesex Circuit. The result was a judgment in favor of the plaintiff, from which the present appeal was taken by the defendants.

The grounds of appeal are eighty-five in number. Many of them present the same question. They naturally fall into seven classes or groups. The first group presents the question of the extent to which the parties to this litigation are bound by the record of the Chancery suit. The second group consists of the grounds of appeal involving the question as to the admission of parol evidence respecting the questions on which the contracts were silent but concerning which representations had been made by the defendants prior to the execution of the agreements. The third group presents the alleged insufficiency of the evidence that the ships could have been completely scrapped within three months. The fourth group are the grounds of appeal which relate to the admission of the testimony of expert witnesses offered by the plaintiff on the subject of what was a reasonable charge for wharfage. The fifth group relates to the refusal of the trial judge to direct the jury to find nominal damages only on the plaintiff's claim for wharfage. The sixth group bears upon the ruling of the trial judge that the plaintiff was entitled to have presented to the jury the question of its right to recover on eleven different items of labor alleged to have been performed by the plaintiff. The seventh group relates to the defendant's liability for the salvaging of the "Philippines" while at the plaintiff's dock. These groups will be taken up in their order for discussion.

The trial judge admitted in evidence, on motion of the plaintiff, the record in the Chancery litigaton for the purpose of showing that the defendant had been adjudged to have had no right after the period of three months to use the plaintiff's plant, and that by the continued use thereof the defendants were at fault. The defendants claim that the admission of the record in the Chancery litigation was error. The present action is between the same parties as appeared in the Chancery litigation. The subject-matter of the present

litigation was the same as in the Court of Chancery, namely, the construction of the agreements from which the difference between the parties arose. The determinations made in the Chancery proceeding were therefore in the present suit *res adjudicata* between the parties.

"The effect of an estoppel by judgment may present two aspects—one where a second suit between the same parties is brought for the same cause of action, the second where a second suit between the same parties is brought not for the same cause of action, but for a cause of action so related to the cause in the preceding suit that some matter, the establishment of which is essential to the recovery by the complainant in the last suit, was in issue and determined in the preceding suit.

"In respect to the first phase in which the question of estoppel presents itself, it is entirely settled that after one judicial determination by a court of competent jurisdiction, a second suit for the same matter, between the same parties or their privies, cannot be relitigated in the same or any other court. Nor does it matter that, in the first suit, evidence existed which was withheld or undiscovered, or that the law was misconceived by the court, or left uncited by counsel, or that no defense was made and judgment went by default, or that only one of several defenses was interposed by the defendant; in spite of any of these defects in the prosecution or defense of the action, the judgment stands as an absolute bar against a second litigation of the same cause of action.

"When, however, a second suit is brought not for the same demand, but for a cause which was a part of the same matter, but was not included in the first action, the estoppel is not so sweeping. In such instance only those issues which are common to both suits, and which had to be or were actually decided in the first suit, are regarded as *res adjudicata* in the second." *Clark Thread Co.* v. *William Clark Co.,* 55 *N. J. Eq.* 658.

It makes no difference in this state if one litigation is considered in the Court of Chancery and the other in a court of law. *City of Paterson* v. *Baker,* 51 *N. J. Eq.* 49. We are of the opinion that the record in the Chancery litigation was

properly admitted in the present action for the purposes stated by the trial court.

The second group of grounds of appeal are directed to the admission by the trial judge of testimony as to what was a reasonable time for the scrapping of the ships. The agreements were silent as to the time within which the work of scrapping was to be completed. The law, therefore, presumed that the work was to be performed within a reasonable time. Evidence of the circumstances surrounding the parties and of the facts which have come to their knowledge at the time the contracts were made is admissible. The evidence received by the court as to the declarations and representations of the defendants as to what they considered a reasonable time for performance was admissible. This evidence did not purport to show that a specific time had been agreed upon between the parties for performance, but what the defendants regarded and desired the plaintiff to understand was contemplated by them as a reasonable time of performance. Many authorities support the admissibility of such evidence. *Ellis v. Thompson,* 3 *M. & W.* 445; *Cocker v. Franklin Hemp and Flax Mfg.,* 5 *Fed. Cas.* 1152. The principle is perhaps most succinctly stated in 2 *Story Conf.* (*5th ed.*), § 1325, in these words:

"Parol evidence of the situation of the parties and of their conversations is admissible to determine their intention in respect to the time of performance."

We see no error in the rulings of the trial judge on the admission of this class of evidence.

It requires but a few words to pass upon the third group mentioned. These grounds of appeal bring up the contention of the defendants that the evidence as to the reasonable time within which the vessels could be scrapped was insufficient. The contention is that the trial judge should have charged the jury on the question of reasonable time as if that evidence were not in the case. This contention is unappealing. If the evidence was admissible, as we have said it was, it necessarily follows that the trial judge had the right to consider this testimony and comment upon it in his charge if he so desired.

The fourth group questions the correctness of the rulings of the trial judge with reference to the admission of testimony offered by the plaintiff as to reasonable charges for wharfage. It does not seem to be contended that this subject is not one which calls for an expert opinion. The contention is that the witnesses produced were not competent to testify. The trial judge must, before expert evidence is received from a witness, determine the question as to whether or not the witness offered is qualified to give expert testimony. If the court decides the witness is qualified as an expert, this finding will not be reversed on appeal if there be any evidence to support it. *Leonard* v. *Aero Co.*, 95 *N. J. L.* 235. An examination of the record in the present case discloses that the first witness for the purpose of proving a reasonable charge for the wharfage service rendered by the plaintiff was Ernest H. Dendel. He was examined as to his qualifications and then counsel for the defendants asked and received permission to cross-examine him upon his qualifications. At the conclusion of this examination the court ruled that the witness was qualified to give expert testimony. There is ample evidence to support this ruling. The witness was vice-president of a dry dock company located at Hoboken. He was familiar with the plaintiff's plant. He had made charges for berthing vessels after repairs on them had been completed. He had been engaged in business for thirty-one years. His information on wharfage charges was obtained from his knowledge of the general practice in such matters in and about New York harbor. The other witness on this subject, John Bennett, was held by the court to have qualified as an expert. The testimony as to his qualifications was of the same character substantially as that given by Mr. Dendel. It fully supported, in our opinion, the finding made by the trial judge that Mr. Bennett had qualified as an expert.

The next contention (fifth group) advanced by the defendants in their appeal is that the trial judge should have charged the defendants' request that there was no competent evidence on which the jury could award the plaintiff more than nominal damages for its claim for use of piers, upland and wharfage space. This contention rests upon the premise

that the testimony of Messrs. Dendel and Bennett was inadmissible. As we have decided that the testimony given by them was competent, the argument of the defendants falls, as the trial judge, in view of the testimony admitted, ruled correctly in refusing to charge the request of the defendants to find only nominal damages upon this claim. As we do not desire to overlook any argument advanced by the defendants, perhaps a few words should be said upon that portion of the defendants' brief in support of the point just considered which states that, as there was no testimony which showed that the plaintiff was making any profits in its business, and the expert witnesses, Dendel and Bennett, testified that none of the shipyards were making at that time a profit, the plaintiff could sustain no loss of profits. In other words, the argument seems to be that if a company operating a shipyard is making no profits in its business, it is not in a situation to recover a reasonable charge for the use of its facilities. The mere statement of this proposition demonstrates its unsoundness.

The sixth group brings up the question of whether or not the trial judge erred in his ruling that the plaintiff was entitled to have the jury pass upon its right to recover nine different items of labor which it alleged to have been performed. These items were included in an exhibit. Bills therefor had been rendered to the defendants. The defendants did not contend that the work had not been done or the moneys which the plaintiff claimed to have paid had not been paid. The defense to the claim was that the amount was not owing by the defendants because of failure on the part of the plaintiff to perform obligations which the defendants claimed rested upon the plaintiff. The plaintiff produced evidence by its general manager that the work was done and paid for by the plaintiff and that these items were owing to the plaintiff. There being evidence to substantiate the plaintiff's position, a question of fact for the determination of the jury was presented. so there was no error in submitting these items to the jury.

The seventh group brings up the question as to whether the trial judge erred in his rulings as to the defendants'

liability to pay for the salvaging of the "Philippines." The evidence shows that during the scrapping of this vessel a heavy copper pipe fell and broke a sea cock in the bottom of the ship which caused the entrance of so large a volume of water into the vessel that it was in danger of sinking. The claim of the plaintiff in this regard was for the moneys disbursed in patching the leak and pumping the water from the vessel. The defendants admitted the charge was reasonable but contended that they were not responsible for the accident. There was a conflict of testimony as to what was the cause of the fall of the copper pipe which broke the sea cock. The question was left to the jury for its decision. We see no impropriety in this. A jury is the arbiter of disputed questions of fact. We have also examined the portion of the charge on this subject and the modification of the defendants' request to charge made by the trial court, and we find no error in them.

This concludes the consideration of all the questions presented by the defendants upon this appeal. The trial of the case took six days. The record and briefs contain nine hundred and eighty-eight pages. In a litigation of such length, so intensively conducted, and presenting novel questions for decision, it must necessarily follow that some criticism of the court's rulings can be made upon an appeal. Our examination of this case has satisfied us that the trial court grasped most intelligently the issues presented, ruled clearly and concisely upon the admission and rejection of testimony, and fairly and concretely presented the claims of both parties to the jury. If the defendants have any grievance it is the verdict rendered by the jury and not the rulings of the learned trial judge who presided.

The judgment is affirmed, with costs.

*For affirmance*—THE CHANCELLOR, CHIEF JUSTICE, TRENCHARD, MINTURN, KALISCH, BLACK, KATZENBACH, CAMPBELL, LLOYD, VAN BUSKIRK, MCGLENNON, KAYS, HETFIELD, JJ. 13.

*For reversal*—None.