## THE TULADI.

District Court, E. D. Louisiana. March 28, 1927.

No. 16374.

**1. Shipping ⬤118—Shipper held not entitled to recover for delay in shipment of coffee because of decline in market price.**

Bills of lading issued by the shore agent of a shipping line acknowledged receipt from libelant of 2,000 sacks of coffee, to be shipped on the steamship Tuladi, "or other steamer or steamers." It also reserved the right to deviate from voyage to transship all or any part, and to land and store "for such time as may be deemed expedient." Only 400 sacks were shipped on the Tuladi, and the remainder was forwarded on three other vessels at intervals during three months. *Held*, that time was not of the essence of the contract, and that in absence of proof of negligent delay libelant was not entitled to recover because of decline in market price of coffee before the later shipments were received.

**2. Shipping ⬤133—There is no lien on vessel in favor of cargo not receipted for as on board.**

There is no lien on a vessel for delay or damage to cargo delivered on lighters for loading, but not receipted for as on board by the master or other officer competent to bind the ship.

In Admiralty. Suit by Leon Israel & Bros., Inc., against the steamship Tuladi. Decree for respondent.

Merrick & Schwarz, Morris B. Redmann, and Ralph J. Schwarz, all of New Orleans, La., for libelant.

Edouard F. Henriques, Sp. Asst. U. S. Atty., of New Orleans, La., for the United States.

BURNS, District Judge. Libelant seeks damages, for loss occasioned by a decline in the market value of coffee during a delay in

shipment, against the American steamship Tuladi and the United States Shipping Board Emergency Fleet Corporation, as owner, under a contract of affreightment, dated May 31, 1920, by which the Mississippi Shipping Company, Incorporated, an operating agent of the said owner, acknowledged the receipt of 2,000 bags of coffee in bills of lading issued therefor, stipulating shipment from Victoria, Brazil, by the steamship Tuladi, or other steamer or steamers, to New Orleans, La., with liberty to call at any port or ports in or out of or beyond the customary route, in any order, etc. The bill of lading contained the following (article 22):

"Also that the company reserves liberty before shipment, or at any subsequent period, and so often as may for any cause be deemed expedient, and at any place, to ship the whole or any part of the said goods by any other steamer or vessel, whether belonging to the company or not, or to transship, or land and store, or put into hulk or craft by lighter or otherwise, for such time as may be deemed expedient, and thence to reship by lighter or otherwise in the same or any other steamer or vessel, whether belonging to the company or not, with liberty for the steamer or vessel to sail or enter port with or without pilots, to tow and assist vessels in all situations, or to be towed, although deviating from the voyage, and to carry goods of all kinds, dangerous or otherwise, and to carry cargo on deck. The vessel or substituted vessel has liberty, before proceeding to her port of destination, or whilst upon the voyage, to proceed or return to and/or stay at any other port or ports, and notwithstanding that the same and the voyage thereto and therefrom may be entirely or partly outside the limits of the voyage above described, or in any rotation or order backwards and/or forwards for any purpose whatever; the intention of this bill of lading being, and it being hereby agreed, that the shipowner shall under no circumstances be responsible for deviation, or any of the delays, consequences, or perils arising directly or indirectly therefrom or in the course of such deviation."

[1] The libel alleges, as a fact well known to the owners and master of the vessel, that coffee is a commodity subject to a considerable fluctuation in market value, and that it was necessary, in order to protect the interest of libelant, that the coffee be delivered in New Orleans within a reasonable time; that a reasonable time would have been the approximate sailing time between Victoria and New Orleans, or say 20 days; that, out of the 2,000 bags of coffee for which the bills of lading were received, there arrived on the steamship Tuladi, on June 23, 1920, only 400 bags of coffee, constituting an unusually large short shipment; that the remaining 1,600 bags were not delivered and tendered in New Orleans until 1,023 bags were tendered from on board other steamers at New Orleans, on August 20, 1920, 140 bags on August 28, 1920, and finally 428 bags on September 27, 1920; that the damages are to be measured by the market value of the said coffee between, say, the arrival of the first shipment on the Tuladi and the respective dates of tender of delivery thereafter.

From the evidence it appears that the local agent of respondent at Victoria actually booked for shipment the whole of the 2,000 bags on the steamship Tuladi, estimating her carrying capacity at some 69,000 bags, because she carried 69,287 bags of the same size and weight and from the same ports on a previous voyage; that the shut-out of libelant's cargo on the voyage in question was probably due to improper loading and waste of stowage space, whereby she took only some 63,000 bags.

The libelants take the position that this was a waste of space, and of itself is proof of the negligence of the carrier. They then urge that respondent's failure to ship the balance of 1,600 bags by the next available steamer was cumulative evidence of negligence, whereby the original shipment was spread out in three additional parcels or installments, causing unreasonable delay. However, the evidence shows that respondent's agents did book the shut-out shipment with the Lloyd Brasiliero for their steamer Campos, which was the next vessel expected to arrive in Victoria. That vessel, however, on June 14, 1920, struck a rock as she was entering the harbor of Victoria and was forced to abandon the voyage. Because of this, the Lloyd Brasiliero was compelled to use the next ship of their line, the Uberaba, which arrived in Victoria on July 5, 1920, and loaded the cargo discharged from the Campos, together with 5,638 bags of the coffee shut out by the Tuladi, including 1,023 bags belonging to libelant, thus leaving in Victoria 706 bags of the libelant's coffee. Because of the booking with the Lloyd Brasiliero, respondent's agents were unable to avail themselves of other steamers operated at Victoria by the Prince and Lamport and Holt Lines. Thereafter Lloyd Brasiliero released respondent's booking at the request of their agent, who then arranged for the forwarding

of this balance in two parts on the Prince Line steamers Glen Afric and Easterner.

Under these circumstances, there was no negligence shown, such as would entitle libelants to damages, because of the specific terms of the contract under which respondent had the right to ship on the Tuladi or on any other steamer or steamers, without any reference to time. Time was not the essence of the contract. Libelant did not contract for particular service, or for a direct sailing, or for a particular market.

The bills of lading do not prove a delivery on board the Tuladi. On the contrary, they were signed by a shore agent, acknowledging receipt of the coffee for "shipment on the Tuladi or any other steamer or steamers," etc., at no particular time, and the coffee was delivered to lighters, as is customary in the port of Victoria. No evidence is offered of any receipt on board the vessel, by any officer thereof capable of binding the vessel so that a maritime lien might attach.

Moreover, the shut-out coffee had been redelivered to the original shippers, Gerhardt & Co., and put in their warehouse at Victoria, when it was found that the Tuladi could not accommodate it. Gerhardt & Co., though in possession of the bills of lading, acknowledged receipt of the coffee at their warehouse and stipulated to deliver it for shipment on the order of respondent's agents. In redelivering the coffee from their warehouse, they substituted other coffee, with different marks on some of it, and thereby contributed to some of the confusion that resulted in the separation of the various lots which came forward by different steamers.

There is testimony in this connection by Mr. Pedrick, an official of the respondent's operating agent, tending to show that the shipper contributed to the delay by the substitution of other coffee and the changing of shipping marks while warehousing the coffee; that, because of this, some of the coffee shut out of the Uberaba remained on lighters until the Glen Afric and Easterner finally lifted same.

The case is not much different from that of United States Shipping Board Emergency Fleet Corporation v. Pensacola Lumber & Timber Co., 290 F. 358, where the Circuit Court of Appeals held that the libelant there was not entitled to damages for a failure to get the benefit of a service for which it did not contract, and that the loss occasioned by a decline in the market value of coffee was not within the contemplation of the parties.

[2] I do not attach much importance to respondent's contention that the suit should be dismissed because the vessel was proceeded against in rem. The suit was filed a few months after the passage of the Suits in Admiralty Act (Comp. St. §§ 1251¼–1251¼l), when the libelant seems to have been uncertain of his rights, and to have proceeded against the vessel in rem and against the owner in personam, but upon in rem principles, as contemplated by the act. It is important, however, in one connection, because the libelant thereby assumes that the vessel is bound; that a lien attached to the vessel by delivery of the coffee to lighters for lading thence on the vessel, whereas, in fact, the shore agent acknowledged receipt of delivery by bills of lading qualified as hereinabove recited. Certainly no lien could attach to the vessel for delay or damage to cargo delivered at ship side, or on a wharf or lighter, unless receipted for as on board by the master or other officer of the vessel competent to bind the ship. The Elmac (D. C.) 285 F. 665; The Saturnus (C. C. A.) 250 F. 407, 3 A. L. R. 1187; The Gutenfels (C. C. A.) 170 F. 937; The Olga S. (No. 16943) 10 F. (2d) 801.

Upon the whole case I conclude that no lien attached to the Tuladi, because there was no delivery, or its equivalent, on board, acknowledged on behalf of the vessel; that the delay of parts of the shipment was due in part to the negligence of the shore agents of the vessel, and in part to the shippers; that the contract did not contemplate delivery for a particular market, or a loss due to a decline in market value; and that the libelant is not entitled to damages for a failure to get the benefit of a service for which it did not contract.

Accordingly there will be a decree in favor of respondent, dismissing the libel, with costs.