## CITY OF NEWARK v. MILLS et al.

### THE SOUTH SHORE.

Circuit Court of Appeals, Third Circuit.
October 8, 1929.

No. 3992.

Wall, Haight, Carey & Hartpence, of Jersey City, N. J. (Thomas G. Haight, of Jersey City, N. J., Charles M. Myers, of Newark, N. J., and George G. Tennant, Jr., of Jersey City, N. J., of counsel), for appellant.

Macklin, Brown, Lenahan & Speer, of New York City, and McDermott, Enright & Carpenter, of Jersey City, N. J. (Horace L. Cheyney, of New York City, of counsel), for appellee.

Before WOOLLEY, Circuit Judge, and GIBSON and McVICAR, District Judges.

WOOLLEY, Circuit Judge. The City of Newark agreed for a consideration to furnish William M. Mills and Andrew H. Mills storage space at Port Newark for their fleet of steam excursion boats during the winter of 1926–27. Eight boats were brought in and tied up at the dock as agreed upon. One night the Steamer "South Shore" suddenly began to fill and the next morning she sank without any known reason, blocking the head of the channel and preventing the use of the dock by other craft. The City called upon the Mills brothers to raise and move the boat. They refused and formally abandoned her. The City, first notifying Mills brothers of its purpose, then raised and moved the wreck at their cost. Upon their refusal to pay, the City brought suit against them on the contract in the Essex County Circuit Court to recover the moneys laid out and expended in raising and moving the wreck in the sum of $21,200. Thereupon William M. Mills and Andrew H. Mills, as former owners of the Steamer South Shore, filed a petition in the District Court of the United States for the District of New Jersey for exoneration from and limitation of liability for damages and loss consequent upon the sinking of the steamer. In accordance with practice, the court restrained the city from further proceeding in the state action until the hearing and determination of the petition. After stipulation for the value of the steamer and her pending freight in

the sum of $1.00 and issuance of a monition and appearance of the City as claimant for damages in the sum named, the trial court, first stating in its opinion that notwithstanding the contract the statutes limiting liability apply to the case, entered a decree by which it found that the sinking of the South Shore was not caused by the design or neglect of the petitioners and did not occur with their privity or knowledge, and held that they be forever exempted and discharged from all loss and liability arising from the sinking of the boat.

On this appeal by the City we are concerned with the validity of the decree without regard to the reasons that moved the trial court to enter it. Clinton M. & M. Co. v. Cochran (C. C. A.) 247 F. 449, 450. Its validity rests primarily on the pleadings which consist of a petition and answer. The petition is in the form usually pursued when an owner of a boat, lost or in collision, claims limitation of liability as provided by sections 4283, 4284 and 4285 of the Revised Statutes (46 USCA §§ 183–185) and supplementary and amendatory statutes, asserting that the sinking of the boat in this instance was not caused by any fault or negligence on the part of the petitioners but was due solely to causes beyond their control and alleging that after the boat had sunk they abandoned her.

The City appearing as claimant admitted by its answer practically all the facts averred in the petition including that of abandonment. It, however, set up as a separate defense to the petitioners' claim for limitation of liability the contract between itself and the Mills brothers substantially as we have stated it with the additional averment that by this contract the petitioners had agreed and promised that they would "shift and remove" the Steamer "South Shore" from the dock on demand of the City any time during the term of the lease or at its termination, and that as the petitioners had refused to raise and move the boat on its repeated demands, the City brought the state action for breach of the contract, claiming in this defense that, as the contract is purely personal, the petitioners are not entitled to the benefit of the limitation of liability which the statutes afford.

On this statement of facts and contention of law the City submitted that the primary question involved is whether the petitioners are entitled to limit their liability under the provisions of section 4283 et seq., of the Revised Statutes (46 USCA § 183 et seq.) and thus are entitled to have the state suit permanently enjoined, a question which, in turn, will depend upon answers to the questions:

(1) Do the limited liability statutes apply to personal contracts of shipowners?

(2) Was the contract upon which the state suit is based of such a character?

Concluding with the statement that the case does not involve a question of ultimate liability nor does it deprive the City of its right to pursue its action in the state court if the statutes do not apply, citing The Erie Lighter 108 (D. C.) 250 F. 490, 493, a matter which, although affected and, it may be, controlled by the later decision in Hartford Accident & Indemnity Co. v. Southern Pacific Co., 273 U. S. 207, 47 S. Ct. 357, 71 L. Ed. 612, will not arise for decision.

The City seems to concede that the petitioners were under no obligation imposed by law to raise the sunken boat unless they had entered into a contract to do so; or, stated differently, the City does not contest the petitioners' right—barring a personal contract to the contrary—to abandon the sunken boat and thereby escape further liability conformably with the rule in admiralty in that regard. The Irving F. Ross, Petitioner (D. C.) 8 F.(2d) 313; Highlands Navigation Corporation, Petitioner (C. C. A.) 29 F. (2d) 37. Nor, seemingly, does the City question the petitioners' right, as matter of law, to have their liability for damages limited under the cited statutes if their liability was not voluntarily assumed under a personal contract. Great Lakes Towing Co. v. Mill Transportation Co. (C. C. A.) 155 F. 11, 22 L. R. A. (N. S.) 769; Id., 207 U. S. 597, 28 S. Ct. 262, 52 L. Ed. 357; Benedict on Admiralty (5th Ed.) 476. Therefore it would appear, as the case has developed before us, that we are not called upon to decide the first broad general question whether "the limited liability statutes apply to personal contracts of shipowners" (as distinguished from contracts imputed to them by law and liability for acts of others in virtue of their ownership of the vessel) by reviewing the decisions on that subject, Richardson v. Harmon, 222 U. S. 96, 106, 32 S. Ct. 27, 56 L. Ed. 110; Pendleton v. Benner Line, 246 U. S. 353, 356, 357, 38 S. Ct. 330, 62 L. Ed. 770; Luckenbach v. Sugar Refining Co., 248 U. S. 139, 149, 39 S. Ct. 53, 63 L. Ed. 170, 1 A. L. R. 1522; Capitol Transportation Co. v. Cambria Steel Co., 249 U. S. 334, 336, 39 S. Ct. 292, 63 L. Ed. 631; Great Lakes Towing Co. v. Mill Transportation Co. (C. C. A.) 155 F. 11, 22 L. R. A. (N. S.) 769; Id., 207 U. S. 597,

28 S. Ct. 262, 52 L. Ed. 357; but are restricted in our decision to the question, assuming without deciding that the statutes do not apply to liabilities assumed by personal contracts, whether in the contract in this case —admittedly personal—the petitioners engaged to raise the sunken vessel and thereby removed themselves from under the protection of the limited liability statutes, for, clearly, if no personal contract had been entered into by the petitioning shipowners with the City, or if one had been entered into but did not contain a personal undertaking and a corresponding liability on their part to raise any vessel that might sink, the case would fall back upon general admiralty law and discussion of the point would be outside of the case. Therefore, as we view the case, the true questions involved are:

(1) Did the owners of the "South Shore" by their personal contract with The City of Newark promise to raise and take her away if she should sink?

(2) If they made no such engagement in the contract, are the petitioning shipowners entitled to limit their liability against the claim of the City for the cost of raising her? [2] The answer to the first question involves an interpretation of the contract. This, in turn, rests on the determination of what is the contract? The City says it is partly written and partly oral; the petitioners say it is wholly in writing. Approaching the latter questions in the order in which they develop in the case, it would seem on first view that the whole contract is in writing. It was made by correspondence between the shipowners and representatives of the City whose authority, quite naturally, the City does not question, for if made without its authority the City has no contract and, accordingly, no defense against the shipowners' right to limit their liability for damages resulting from the sinking of the boat. The contract has to do mainly with the docking footage available for mooring the shipowners' boats, the length of the tying-up period, the monthly rental, duty of shipowners to provide watchmen and other necessary protection, and a covenant on the part of the City against liability for the care and safety of the boats. Added to these matters the City made a requirement of the shipowners in the following language:

"It should be understood that if this offer is accepted that you are to provide a watchman and that in the event that the dock is to be utilized for the purpose of loading or discharging vessels, that your boats are to be moved to a dock adjoining and provided by the City."

The shipowners signified their acquiescence in this requirement by engaging to comply with it in the following language:

"We will agree to have proper watchmen on our boats and it would be agreeable to shift boats when you would require same. * * * Should you need any part of the dock space we occupy before these boats go into commission we will move them at your request. We will have no dispute about the space when you need it, as we will give and take in this matter."

By these terms of the written contract—which is all there is on the subject—the City contends that the shipowners promised to raise and float away a sunken boat. As such an engagement is not within the express terms, the City maintains it is there nevertheless by proper construction, arguing thus:

"There was an express contract to remove the vessel from the particular berth in which she was originally placed, on demand." The phrase, "remove on demand" means that the boats "should be removed on demand regardless of intervening occurrences," such as, in this instance, the sinking of one of them. But the coined phrase "remove on demand" or its exact equivalent "move them at your request" is not open to construction when severed from its context, for the phrase does not stand alone. It is connected with expressions which have to do with docking space and clearly denote surface movement or shifting of boats from place to place, particularly from the places where the boats were first moored to places at "a dock adjoining and provided by the City" to meet the City's convenience. It is difficult to read in these terms, which have to do specifically with the movement of boats from place to place *at* the dock to make room for other boats, an intention by the parties that the shipowners should move boats from the bottom of the river to the surface and then float them away. True, the parties, had they thought of it, or, thinking of it, had desired, could have agreed that the shipowners should raise and move a sunken boat at their cost. But they did not do so by express terms nor by terms necessarily implied. In the absence of one or the other we hesitate to rewrite the contract by construction.

The City further urges, quite correctly, that there was an implied undertaking on the part of the shipowners in the written contract to remove the boats on the expiration of the term, Perth Amboy Dry Dock Co. v. Crawford, 98 N. J. Eq. 693, 130 A. 519; Id., 109 N. J. Law, 440, 135 A. 897, and that (not so correctly) they breached their contract when at the end of the term they did

not remove the sunken boat. The precise character of this implied undertaking depends upon the general terms of the contract which do not extend to removing a boat that had sunk at a time intermediate the beginning and ending of the term, for with that event the admiralty law intervened.

And, finally, the City contends that the contract is not wholly written but that in addition to the writing the parties agreed orally that the shipowners should raise and remove at their cost any vessel that should sink. While the learned trial court admitted this testimony, it disregarded it in reaching its judgment, acting, no doubt, on familiar law which recognizes that the existence of a separate oral agreement as to any matter on which a written contract is silent, and which is not inconsistent with its terms, may be proved by parol, "if under the circumstances of a particular case it may properly be inferred that the parties did not intend the written paper to be a complete and final statement of the whole transaction between them."

Evidently the learned trial court found nothing in the correspondence constituting the contract which indicates that the parties did not intend the contract thus made to be complete and final. It, apparently, covers all essential matters as well as matters of minor detail incident to such a transaction and omitted only the possibility of a vessel sinking and the consequences. But, continuing the quotation, the law is that "When the writing itself upon its face is couched in such terms as import a complete legal obligation, without any uncertainty as to the object or extent of the engagement, it is conclusively presumed that the whole engagement of the parties, and the extent and manner of their undertaking, were reduced to writing." Seitz v. Brewers' Refrigerating Co., 141 U. S. 510, 517, 12 S. Ct. 46, 48, 35 L. Ed. 837; De Witt v. Berry, 134 U. S. 306, 10 S. Ct. 536, 33 L. Ed. 896; Etna Forge & Bolt Co. v. Youngstown Sheet & Tube Co. (C. C. A.) 282 F. 786; Rash v. Shower Brothers Co. (C. C. A.) 288 F. 819; Harding v. Taubel (C. C. A.) 1 F.(2d) 614. We think the law when applied to the facts of the case rules out of the contract the alleged oral agreement. There being in the contract no express or necessarily implied agreement on the part of shipowners to raise and move the sunken boat, there is no personal contract or personal contractual engagement which places the shipowners outside of the protection which the statutes limiting liability afford them. Therefore the case falls back upon the general law that owners of a sunken boat are not required to raise her but may abandon her and thereby put an end to their liability beyond her value, The Irving F. Ross, Petitioner (D. C.) 8 F.(2d) 313; Highlands Navigation Corporation, Petitioner (C. C. A.) 29 F.(2d) 37; the shipowners' rights in that regard being established in a proper proceeding under the appropriate statutes limiting their liability.

The decree of the District Court is affirmed.