## THE VALMAR.

### CELIO v. JONES.

### No. 13.

District Court, E. D. Pennsylvania.

May 8, 1941.

See, also, 38 F.Supp. 615.

Freedman & Goldstein, of Philadelphia, Pa., for libelant.

Howard M. Long, of Philadelphia, Pa., for respondent.

KALODNER, District Judge.

Libellant, John Celio, is a resident of Brooklyn, N.Y.; respondent, Walter Jones, is a resident of New York City. Jones owns and operates the respondent M/S Valmar in foreign commerce under the Honduran flag. On September 16, 1940, Celio and Jones entered into a written charter party, under which Jones agreed to charter the Valmar to Celio for two trips and returns to Nicaragua and other ports, for the sum of $2,000 per trip, plus 50 per cent of the money obtained from the cargoes going south. Celio paid $1,000 at the time of the execution of the contract, and an additional $1,000 on September 21, 1940, as provided by the contract. Under the terms of the charter party the Valmar was to be ready to sail on September 26, 1940. It was not ready on that date and, according to the libel, Jones refused to proceed further with the performance of the charter party. On February 26, 1941, Celio filed the instant libel in personam and in rem against Jones and the Valmar.

Respondent Jones thereupon filed exceptions to the libel, upon the ground that the cause of action alleged in the libel and the damages claimed thereunder arose from the breach of an executory contract of charter party, for which breach libellant is not entitled to a maritime lien against the Valmar.

A further exception to the libel was on the ground that the damages claimed therein are made up in part of expenses incurred by the libellant, and in part of loss of expected profits, which losses, it is contended are not recoverable in the in rem proceedings against the Valmar.

It is undisputed that there was a breach of the charter party. The question raised by the exceptions is as to whether or not the breach entitled the libellant to a maritime lien upon the Valmar upon which an attachment in rem could be founded.

A brief summary of the allegations in the libel is appropriate. Setting forth the char-

ter party [1] the libel avers that after its execution and the payment of the $2,000 consideration, libellant engaged agents and a gang of men at a cost of $600 to "purchase, cut and gather growing crops of bananas and load same aboard the M/S Valmar for shipment to the libellant in New York"; that by reason of the breach, the libellant suffered an estimated loss of revenue of $1,000 from available cargo that the respondent refused to accept for the trip south, and an additional loss of profit from sales of banana cargoes in the sum of $14,482; that the libellant expended $100 for supplies, groceries, etc., put aboard the Valmar for the provisioning of its crew at the request of the respondent.

Adding to the sums mentioned the $2,000 paid under the charter party, the libel seeks recovery from the respondent of the sum of $18,182.

The crux of the respondent's exceptions to the libel is that while Jones, the owner of the Valmar, may have breached his contract with the libellant, that the libellant is not entitled to a suit in rem against the Valmar because the Valmar never entered into the performance of the charter party.

It may be stated at this point that the respondent does not seriously dispute the libellant's right to an action in rem against the Valmar for the groceries and supplies put aboard the vessel for the provisioning of its crew—although objection is raised to the inadequacy of the pleading with respects to the $100 outlay for the groceries, etc., to wit, that there was no averment as to the time or place of delivery, nor any schedule showing the amount of the supplies, etc. In any event, I am of the opinion that the libellant had a right to a lien for these provisions, and is entitled to an action in rem to the extent of that lien.

Now as to the contentions with respect to the principal point in controversy—Was the transaction and the breach of the charter party of such a nature as to entitle the libellant to an action in rem against the Valmar for the recovery of (1) the $2,000 consideration paid under the charter party; (2) the $600 expended for the hire of men to prepare the cargo in Nicaragua for the northbound voyage; (3) the estimated $1,000 loss of revenue from available cargo that the respondent refused to accept for the trip south; and (4) the $14,482 estimated loss of profits from the sale of banana cargoes in the scheduled northbound trips?

The libellant premises his right to proceed against the Valmar on two contentions:

(1) That the $2,000 was paid as advances "solely for the purpose of putting the vessel in a seaworthy condition", as set forth in paragraph 8 of the libel; and

(2) That the $2,000 paid was advanced as prepaid freight in furtherance of the contract for the purpose of putting the ship in seaworthy condition, and that the acceptance by the respondent of the $2,000 in furtherance of the contract constituted a lien against the vessel enforceable in rem, since upon payment of the $2,000 the owner of the vessel enjoyed the benefit of substantial performance so as to create a lien against the vessel in favor of the libellant for damages.

As to the first of the libellant's contentions:

The charter party was in writing and speaks for itself [1]. It does not support in any way the libellant's contention that the $2,000 paid was to put the vessel in seaworthy condition. The libellant argues that all of the allegations in the

---

[1] September 16th, 1940.

"I, Walter Jones, agree to charter my boat 'Valmar' to Mr. John Celio of 1005 Wallabout Market, Brooklyn, New York, for two trips and returns to Nicaragua, Spanish Honduras, or British Honduras, for the sum of $2,000 per trip plus one half or 50% of the money obtained from the cargoes going south.

"Walter Jones is to pay for crew's wages, food, repairs and insurance to the vessel. Fuel and lube oil is to be paid from the cargo monies going south. The loading charges, wharfage and port charges on the trip going south are also to be taken from the cargo monies going south.

"The loading charges, wharfage and loading port charges on the trip carrying bananas are to be paid for by Mr. John Celio.

"Walter Jones further agrees to have the boat fully equipped with extra blowers as agreed with Mr. John Celio.

"If both trips are found to be successful to Mr. John Celio and Mr. Walter Jones, Mr. Walter Jones agrees to sell the boat to Mr. John Celio for the sum of $25,000.00 to be paid within ten days after the completion of the second trip.

"The vessel will not be liable for any

libel must be taken as true and correct in considering exceptions to the libel. However, it is patent that paragraph 8 of the libel—alleging that the payment of the $2,000 was for the purpose of making the Valmar seaworthy—cannot have the effect sought by the libellant, since it is well settled that where parties, without any fraud or mistake, have deliberately put their engagements in writing, the law declares the writing to be not only the best, but the only, evidence of their agreement, and that all preliminary negotiations, conversations and verbal agreements are merged in and superseded by the subsequent written contract, and that unless fraud, accident or mistake be averred, the writing constitutes the agreement between the parties, and its terms cannot be added to nor subtracted from by parol evidence. See Harding v. Taubel, 3 Cir., 1 F.2d 614; City of Newark v. Mills (South Shore), 3 Cir., 35 F.2d 110, 1929 A.M.C. 1552; J. I. Case Threshing Mach. Co. v. Buick Motor Co., 8 Cir., 39 F.2d 305.

There was no allegation in the libel that the alleged undertaking to put the vessel in seaworthy condition was omitted from the written charter party by fraud, accident or mistake, and the writing therefore constitutes the sole evidence of the undertaking between the parties.

As to the libellant's second contention that the $2,000 was advanced as prepaid freight to enable the vessel to be put in seaworthy condition—there is no allegation in the libel that the $2,000 was paid as "prepaid freight" and, even had it been so alleged, it would have come within the parol evidence rule cited above.

Incidentally, in connection with the libellant's argument that the $2,000 was paid to put the vessel in seaworthy condition, the libel itself, in paragraphs 10 and 11 [2] alleges that Jones, the owner of the vessel, failed to make the repairs and this, of course, effectively disposes of libellant's contention that the payment to finance the repairs obligated the vessel itself under libellant's own theory of the law.

The conclusion is inescapable that the present case involves a simple breach of an executory contract of charter party, for which the libellant is not entitled to a maritime lien against the vessel.

"* * * If the cargo be not placed on board, it is not bound to the vessel, and the vessel cannot be in default for the non-delivery, in good order, of goods never received on board. Consequently, if the master or owner refuses to perform his contract, or for any other reason the ship does not receive cargo and depart on her voyage according to contract, the charterer has no privilege or maritime lien on the ship for such breach of the contract by the owners, but must resort to his personal action for damages, as in other cases. * * *

" 'And this court has decided, in the case of The Schooner Freeman v. Buckingham, 18 How. [182] 188, 15 L.Ed. 341, that the law creates no lien on a vessel as a security for the performance of a contract to transport cargo, until some lawful contract of affreightment is made, *and a cargo shipped under it.*' " (Emphasis supplied.) Osaka Shosen Kaisha v. Pacific Export Lumber Co., 260 U.S. 490, 498, 43 S.Ct. 172, 173, 67 L.Ed. 364.

Further, from the same opinion (260 U. S. page 499, 43 S.Ct. page 174):

" 'The doctrine that the obligation between ship and cargo is mutual and reciprocal, and does not attach until the cargo is on board, or in the custody of the master, has been so often discussed and so long settled, that it would be useless labor to

damage done to the Banana Cargo, but the vessel will have the full cooperation from every member of the crew for the good delivery of the bananas.

"Received from John Celio $1,000.00 (one thousand dollars) on account, balance of $1,000 to be paid on or before September 21st, 1940.

"Boat is to be ready to sail on September 26th, 1940.

    "Accepted By Walter A. Jones
    "Accepted By John Celio."

2 "(10) That in breach of the terms of said charter party, said M/S Valmar was not ready to sail on September 26th, nor at any time thereafter; and at the present time said vessel is not seaworthy, repaired nor equipped to make an ocean voyage along the Atlantic coast to Nicaragua, Spanish Honduras or British Honduras.

"(11) That on September 26, 1940, and at all times thereafter, the respondent Walter Jones refused, failed and neglected to have said M/S Valmar enter into the performance of said charter party, and has failed, neglected and refused to repair and equip said M/S Valmar so as to render the same seaworthy and in fit condition to fulfill the terms and conditions of said charter party."

restate it, or the principles which lie at its foundation. The case of the Schooner Freeman v. Buckingham, decided by this court, is decisive of this case.' The Lady Franklin, 8 Wall. 325, 329 (19 L.Ed. 455).

" 'It is a principle of maritime law that the owner of the cargo has a lien on the vessel for any injury he may sustain by the fault of the vessel or the master; but the law creates no lien on a vessel as a security for the performance of a contract to transport a cargo until some lawful contract of affreightment is made, and the cargo to which it relates has been delivered to the custody of the master or some one authorized to receive it.' The Keokuk, 9 Wall. 517, 519 (19 L.Ed. 744)."

See, also, Schooner General Sheridan, 10 Fed.Cas. 182, No. 5,319; Verderwater v. Mills, 19 How. 82, 15 L.Ed. 554; The Trader, D.C., 17 F.2d 623; The Saturnus, 2 Cir., 250 F. 407, 3 A.L.R. 1187; The Tuladi, D.C., 18 F.2d 627; The Arabien, D.C., 11 F.2d 304, 1926 A.M.C. 98.

The libellant, conceding the well-settled rule above cited, attempts to distinguish the instant case on the ground that under the charter party there was no requirement that a cargo be loaded on the vessel on the southbound voyage, and that when he paid the $2,000 called for by the charter party that he had performed his part of the contract, and that when the respondent accepted the $2,000 he, too, had entered upon the performance of the contract. That contention cannot prevail. An inspection of the charter party discloses that the consideration for the charter was to be "$2,-000 per trip plus one half or 50 per cent of the money obtained from the cargoes going south". According to the libel itself, no cargo was loaded on the ship; indeed the libellant seeks to recover $1,000 in damages (paragraph 13) for "estimated loss of revenue from available cargoes respondent Walter Jones refused to accept for trips south".

The libellant has cited numerous cases in support of his contention that where an advance payment is made for the charter hire, that not only the owner but the vessel itself is responsible for the repayment. I have examined these cases and found in them no support for the libellant's view.

For the reasons stated the exceptions to the libel are sustained, except as to the lien for the provisions placed aboard the vessel. An appropriate order may be submitted in accordance with this opinion.